464 A.2d 1386

**COMMONWEALTH of Pennsylvania**

v.

**Leroy EDNEY, Appellant.**

Superior Court of Pennsylvania.

Submitted April 12, 1983.

Filed Aug. 26, 1983.

Harold Diamond, Philadelphia, for appellant.

Jane Cutler Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before HESTER, MONTEMURO and POPOVICH, JJ.

HESTER, Judge:

On August 23, 1979, Officers Dizio, Fellino, Robinson and La Bou of the Philadelphia Police Department were assigned to a special plain-clothes detail on City Line Avenue in the City of Philadelphia. While they were operating an unmarked vehicle in a westerly direction on City Line Avenue, they observed appellant, Leroy Edney, and his co-defendant, Larnell Woods, standing near the entrance of the Acme Supermarket at the intersection of 76th Street and City Line Avenue. Both men glanced furtively and intermittently at each other, inside the store and to the store's adjacent parking lot. The officers drove their vehicle around the block and parked directly across the avenue from the supermarket.

Shortly thereafter, appellant and his co-defendant entered the store and joined a third unidentified accomplice who apparently had entered the store earlier. Once inside, ap-

pellant stood near the front entrance brandishing a revolver and keeping the store employees and customers in check while Woods compelled an employee at gun point to open the check drawer and safe. The three men then ran from the store, to a light-blue, four-door Oldsmobile parked in the adjacent lot. Woods assumed the driver's position while appellant and the unidentified male took the rear seat. Off-duty Philadelphia detective, Patrick Devlin, observed the criminal activity also; in fact, he was the first to confront the three men as they entered the Oldsmobile.

Forty feet from the Oldsmobile, Devlin ordered the trio to submit. Instead, Woods raised his revolver and both he and Devlin fired at each other simultaneously. Devlin ran for cover as the four plainclothesmen joined to terminate the foray.

Just then, Woods began driving the Oldsmobile from its parking space with appellant in the rear seat and the unidentified male fleeing on foot. A further exchange of gunfire resulted in wounding Woods and forcing the vehicle from his control; it veered from the eastbound lane of City Line Avenue and stopped against a tree.

A Smith & Wesson .357 revolver was recovered from the floor at Wood's feet, $14,000.00 in cash was scattered through the car and appellant was lying unharmed on the rear floor with a chrome-plated revolver underneath his chest.

As a result of this incident, appellant was charged with robbery, possessing instruments of crime generally, simple assault, aggravated assault, criminal conspiracy and attempted murder. Prosecution of appellant and co-defendant was severed.

Following a lengthy jury trial in the Court of Common Pleas of Philadelphia County, appellant was found guilty of robbery, possessing instruments of crime generally, and criminal conspiracy. He was sentenced to not less than six years nor more than twelve years of imprisonment on the robbery bill, said sentence to run consecutively to a sen-

tence imposed earlier on an unrelated conviction. A two and one-half to five-year sentence on the bill of possessing instruments of crime generally and a five to ten-year sentence on the criminal conspiracy bill were ordered concurrent to the robbery sentence.

Post trial motions for new trial and arrest of judgment were filed and denied. This timely appeal was taken from the judgment of sentence.

Appellant argues first that the trial judge erred in refusing to recuse himself due to his presiding over a trial for unrelated charges against appellant just two weeks prior to trial on the instant charges. Appellant was found guilty of those earlier charges and sentenced to undergo imprisonment by the same judge. The trial judge's refusal to recuse himself was "particularly damaging", according to appellant, because it forced him to forego a non-jury trial. He reluctantly proceeded to trial before a jury due to the fact that he was of the opinion that the trial judge was incapable of presiding impartially, having become acquainted at the earlier trial with appellant's character traits and behavioral norms.

In *Commonwealth v. McQuaid*, 273 Pa.Super. 600, 417 A.2d 1210 (1980), the trial judge had presided over a jury trial on charges brought against the defendant three years earlier. Citing *Commonwealth v. Conrad*, 241 Pa. Super. 324, 361 A.2d 421 (1976), the *McQuaid* court placed upon the party seeking disqualification the burden of producing evidence of the unquestionable "bias, prejudice or unfairness" of the trial judge. Evidence that the trial judge presided over an earlier trial involving the same defendant is not, in itself, sufficient evidence of prejudice, nor does it switch to the Commonwealth the burden of proving the judge's incessant impartiality. As in *McQuaid*, appellant produced no evidence, other than the earlier unrelated proceeding, of bias or prejudice.

As in *McQuaid*, the proceedings here were conducted before a jury, the ultimate fact-finders of guilt or innocence.

Much of the criminal assessment did not lie with the judge, and we detect nothing from the record to indicate that his rulings removed factual issues from the jury or unjustly guided their final determination.

■ Moreover, assuming appellant would have proceeded to a non-jury trial had the trial judge recused himself, we find no prejudice suffered as a result of his defending himself before a judge and jury. An accused does not have an absolute right to a non-jury trial; his motion to waive a jury trial may confront objections by the prosecution and is subjected to approval by the court. Pa.R.Crim.P. 1101; *Commonwealth v. Sorrell*, 500 Pa. 355, 456 A.2d 1326 (1982).

It is appellant's next contention that the prosecutor made several prejudicial remarks during opening and closing arguments that tainted the adjudication of guilt. First, frequent references were allegedly made to the actions of co-defendant Woods and his absence from the courtroom. This ploy was utilized, according to appellant, for the purpose of imputing guilt to appellant for the criminal acts of Woods; and, secondly, for the purpose of encouraging the jury to infer from Woods' absence that he had no exonerating testimony to offer on appellant's behalf. Particularly disturbing to appellant, in apparent support of his contention that the prosecutor led the jury to believe that Woods' absence indicated appellant's guilt, was the prosecutor's comment during opening argument on appellant's and Woods' relationship: "From the testimony, the credible testimony, if you find it credible, you will understand the connection and it will not be difficult."

■ It is unreasonable to expect, especially during lengthy trials, that all impropriety will result in reversal. Many improprieties are of no consequence. Many remarks by the prosecutor are unwisely uttered; nevertheless, they simply do not warrant the granting of a new trial. Only where such remarks may be reasonably said to deprive the accused of due process of law, is it appropriate to reverse a

conviction. *Commonwealth v. Garcia,* 478 Pa. 406, 387 A.2d 46 (1978); *Commonwealth v. Goosby,* 450 Pa. 609, 301 A.2d 673 (1973). For example, a prosecutor's comment that the defendant's testimony "isn't worthy of my comment, let alone worthy of your belief," was deserving of reproach, yet it did not merit a new trial. *Commonwealth v. Middleton,* 269 Pa.Super. 17, 409 A.2d 41 (1979).

We do not find the remark made by the prosecutor herein nearly as disturbing as that remark made in *Middleton.* We would be remiss, therefore, in ordering a new trial where one was deemed inappropriate by the *Middleton* court. Secondly, appellant was charged with criminal conspiracy; therefore, the actions of Woods were significant. Conspiracy necessarily involves an agreement to promote and facilitate a criminal act; 18 Pa.C.S.A. § 903; it also involves holding all conspirators criminally responsible for the acts of one conspirator committed in furtherance of the plan. *Commonwealth v. Antico,* 146 Pa.Super. 293, 22 A.2d 204 (1941). Our reading of the aforementioned quoted passage convinces us that the prosecutor was not attempting to lead the jury to conclude that Woods' absence at trial incriminated appellant; that would be a strained interpretation. Rather, we believe that the "connection" was a clear reference to criminal conspiracy and the imputing of guilt to appellant for the actions of Woods. This was relevant and admissible evidence.

Appellant avers that the prosecutor's handling of two revolvers during closing argument inflamed the passions of the jury, thereby interfering with their objective evaluation of the evidence. The record does not indicate that the prosecutor gestured with the weapons, aimed them at the jury or held them for an unduly long period of time. Furthermore, the jury was frequently instructed to dismiss all comments, questions and actions by counsel. Many improper actions can be neutralized by the court's corrective instruction. See *Commonwealth v. Martinolich,* 456 Pa. 136, 318 A.2d 680 (1974); cert. den. and app. dismd., *Martinolich v. Pennsylvania,* 419 U.S. 1065, 95 S.Ct. 651,

42 L.Ed.2d 661 (1974); *Commonwealth v. Lowery,* 440 Pa. 361, 269 A.2d 724 (1970).

■ Next, appellant argues that certain prejudicial evidence was admitted rendering appropriate the ordering of a new trial. In particular, appellant complains that Officer Dizio's testimony on direct examination that he was "assigned to a special rape detail" the evening of appellant's arrest was evidence of violent crimes irrelevant to the instant proceedings and implicating appellant beyond the crimes charged.

A similar argument was raised by the defendant in *Commonwealth v. Dalahan,* 262 Pa.Super. 615, 396 A.2d 1340 (1979). There, the defendant was convicted of attempted burglary and possessing an instrument of crime; police officers testified that he was arrested while they were on a special burglary assignment. In response to the defendant's argument that the officers' testimony led the jury to believe that the defendant must have been guilty of burglary since he was apprehended in the area of the special assignment, the court responded:

> "We believe appellant's argument is specious. If drawn to its logical end, it would require all police officers to testify in plainclothes without reference to their occupation as policemen, since according to appellant's argument, if one is caught by a policeman, whose job it is to catch wrongdoers, then obviously he must be guilty of some wrongdoing. All people are aware that the function of a policeman is to apprehend suspected wrongdoers. The fact that the policeman is on special duty to apprehend burglars and he arrests an individual who is subsequently charged with burglary, does not create a prejudicial inference with the jury that he is any more guilty than someone who is apprehended by a "regular" police officer. *Id.,* 262 Pa.Superior Ct. at 623, 624, 396 A.2d 1333, 1334 (1979).

We find the testimony here of the special rape assignment less harrowing to appellant's position than the *Dalahan* testimony. Appellant was not charged with rape; even

without the cautionary instruction given by the trial judge to disregard all references to crimes not charged, we do not believe that any jury could strain its logic to the point of inferring guilt of *robbery* from evidence of a special *rape* assignment.

Appellant once again objects to the actions of Woods being used as evidence against him. For those reasons given earlier in rejection of appellant's objection to such evidence being discussed by the prosecutor in opening argument, we summarily dismiss such argument here.

Lastly, appellant contends that the prosecutor used peremptory challenges to systematically exclude black jurors and thereby deny appellant's right to be judged by his peers. In *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), reh. den., 381 U.S. 921, 85 S.Ct. 1528, 14 L.Ed.2d 442 (1965), our United States Supreme Court considered the constitutionality of using peremptory challenges to exclude blacks from a jury. The *Swain* court initially noted that peremptory challenges are often exercised upon quickly and perhaps unjustly-formed impressions of a person's character. Despite such whimsical or prejudicial exclusion of individuals from the jury, it does not amount to a denial of equal protection of the laws. The *Swain* court refused to use the Constitution as a means to require an inquiry into a prosecutor's reasons for exercising peremptory challenges. A presumption was established whereby the prosecution's use of challenges was to obtain an objective and impartial jury to hear a case; the mere proof that all Blacks are excluded in a particular case, which is the extent of appellant's proof, is not enough to overcome such a presumption. There must be proof that over a lengthy period of time the prosecutor categorically excluded Blacks from juries. See *Commonwealth v. Anderson,* 302 Pa.Super. 457, 448 A.2d 1131 (1982); *Commonwealth v. Futch,* 492 Pa. 359, 424 A.2d 1231 (1981).

For these reasons, judgment of sentence is affirmed.