501 A.2d 250

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Gerald CARTER, Appellant.**

Superior Court of Pennsylvania.

Submitted April 4, 1985.

Filed Oct. 4, 1985.

Reargument Denied Dec. 16, 1985.

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Com., appellee.

Before CAVANAUGH, OLSZEWSKI and HOFFMAN, JJ.

CAVANAUGH, Judge:

In this appeal, Gerald Carter contends that his due process rights and rights under Pa.R.Crim.P. 1101 were violated because he was tried within the Career Criminal Program of the Philadelphia Common Pleas Court. He argues that because the judges in that program are aware that defendants assigned thereto have prior convictions, he was deprived of his right to be tried without a jury before an impartial factfinder, and that the District Attorney's Office usurped authority which our Supreme Court had previously denied it in creating a situation wherein the trial court had no choice but to grant a jury trial. Appellant's other contention is that his right to a speedy trial under Pa.R. Crim.P. 1100 was violated. We disagree with these contentions and therefore affirm.

## I.

Appellant was assigned by the Philadelphia District Attorney's Office to be tried within the "Career Criminal Program" of that county's Common Pleas Court. According to the lower court, this program was instituted by the District Attorney's Office and the President Judge for the purpose of more efficiently prosecuting recidivists. In order to be assigned to the program, a defendant must have been convicted of certain enumerated offenses a specified number of times.[1] Once assigned to the program, a defend-

---

1. For example, in 1983, a defendant could be included in the program if he had been convicted three times of certain classes of homicide, rape, burglary, involuntary deviate sexual intercourse, and aggravated assault, or had been twice convicted of robbery. The District Attorney

ant is tried before one of three judges. As the lower court stated: "Because of their assignment to the Program, judges know that, generally, defendants coming before them have been designated Career Criminals by the District Attorney." Lower Court op. at 18 n. 20.

The program's advantage apparently lies in that, unlike the usual practice in the District Attorney's Office, individual prosecutors are assigned to cases from pre-trial through the conclusion of the trial. Thus, a single, experienced prosecutor and a special staff deal with all stages of the case. According to the lower court, this procedure of "intensive vertical prosecution" helps to avoid excessive delays and promotes the more efficient prosecution of repeat offenders.

■■ Appellant contends that he was unable to exercise his right to waive a jury trial because the judge before whom he was tried was aware that he had a prior record. This court has previously disposed of this argument in *Commonwealth v. Hailey*, 332 Pa.Super. 167, 172–73, 480 A.2d 1240, 1242–43 (1984):

> Appellant also challenges the administrative procedure employed by the Philadelphia District Attorney's Office known as the Career Criminal Program. Appellant claims that cases in which the accused has certain prior convictions are assigned to one of three designated judges and this assignment effectively denies an accused his "right" to a non-jury trial because the trial judge knows the accused has prior convictions. Appellant's argument must fail as it is based on an incorrect premise; an accused does not have an absolute right to a bench trial. *Commonwealth v. Sorrell*, 500 Pa. 355, 456 A.2d 1326 (1982); *Commonwealth v. Edney*, 318 Pa.Super. 362, 464 A.2d 1386 (1983).

In *Singer v. United States*, 380 U.S. 24, 36, 85 S.Ct. 783, 790, 13 L.Ed.2d 630, 638 (1965), the United States Supreme Court wrote:

> also considered the remoteness of the prior convictions in deciding whether an accused should be given career criminal treatment.

628

> In light of the Constitution's emphasis on jury trial, we find it difficult to understand how the petitioner can submit the bald proposition that to compel a defendant in a criminal case to undergo a jury trial against his will is contrary to his right to a fair trial or to due process. A defendant's only constitutional right concerning the method of trial is to an impartial trial by jury.

In *Singer*, the court upheld the Federal Rule whereby the defendant's right to waive a jury trial is conditioned on the consent of both court *and* prosecutor. "[I]f either of them refuses to consent, the result is simply that the defendant is subject to an impartial trial by jury—the very thing that the Constitution guarantees him." *Singer, supra,* 380 U.S. at 36, 85 S.Ct. at 790, 13 L.Ed.2d at 638. (In Pennsylvania, *Commonwealth v. Sorrell,* 500 Pa. 355, 456 A.2d 1326 (1982) denied the prosecutor the absolute right to demand a jury trial.) A defendant simply does not have an absolute right to waive a jury trial. *Commonwealth v. Edney,* 318 Pa.Super. 362, 464 A.2d 1386 (1983). Therefore, we must conclude that there has been no violation of due process in the instant case.

Appellant also argues that in assigning him to the Career Criminal Program, the District Attorney's Office has accomplished indirectly what it is not permitted to do directly. In *Commonwealth v. Sorrell,* 500 Pa. 355, 456 A.2d 1326 (1982), our Supreme Court denied the prosecution the absolute right to demand a jury trial (by vetoing a defendant's attempted jury trial waiver). "While the prosecutor's concurrence or opposition to a defense request for a non-jury trial is a relevant consideration in determining the mode of trial ... the decision whether to permit a non-jury trial is to be made by the court...." *Sorrell, supra,* 500 Pa. at 360, 456 A.2d at 1328. This holding was deemed to be consistent with Pa.R.Crim.P. 1101.

> In all cases, the defendant may waive a jury trial with the consent of his attorney, if any, and approval by a judge of the court in which the case is pending, and elect to be tried by a judge without a jury. The judge shall ascertain

from the defendant whether this is a knowing and intelligent waiver....

The appellant argues that by assigning him to the Career Criminal Program, the District Attorney's Office has left him no alternative but to request a jury trial and that the trial court has also been denied the discretion of granting a non-jury trial. Thus, argues appellant, the assignment to the program is tantamount to giving the prosecution an absolute right to a jury trial and contravenes both *Sorrell* and Rule 1101. Although we disagree, this contention warrants our careful consideration.

Judges frequently refuse to allow a defendant to waive a jury trial when they would be biased due to their knowledge of the defendant's previous record. *See Commonwealth v. Sorrell, supra.* "The trial court is not constitutionally prohibited from denying a defendant's request to waive a jury trial." *Commonwealth v. Maxwell,* 312 Pa.Super. 557, 561, 459 A.2d 362, 364 (1983). However, the Career Criminal Program allows the prosecutor alone the power to designate which recidivists will be assigned to the program. Appellant argues that the prosecutor has usurped authority which *Sorrell, supra,* and Rule 1101 meant to deny him.

■ According to *Sorrell* and Rule 1101, the prosecutor has no absolute right to a jury trial. The Career Criminal Program does not attempt to confer such a right on him. According to the lower court, this program was instituted not by the District Attorney alone, but in conjunction with the President Judge of the Philadelphia Court of Common Pleas. It was instituted in an attempt to control recidivism more effectively and the fact that it impinges upon a defendant's ability to waive his right to a jury trial is but a by-product of that worthy policy. Appellant and similar repeat offenders are hardly in a position to deny that their actions are the cause of this program. They will not now be heard to complain that they are denied their desired mode of trial. Lest we lose perspective of this issue, we note that as a result of our holding, recidivists will be accorded the very thing which our Constitution guarantees

them—the right to a jury trial. Appellant has not asserted that trial by jury—which for centuries has been the cornerstone of our system of jurisprudence—has in any way prejudiced him.

In *Sorrell*, our Supreme Court denied the prosecution the right to veto a defendant's attempt to waive a jury trial for several reasons. "By conferring upon the prosecution an absolute right to jury trial, 42 Pa.C.S. § 5104(c) [which the court declared unconstitutional] precludes the trial court the discretion conferred by Rule 1101 in assessing whether a nonjury trial should be permitted." *Sorrell, supra,* 500 Pa. at 361, 456 A.2d at 1328–29. In the instant case, the assignment of a defendant to the Career Criminal Program does not absolutely preclude the trial court from exercising the discretion conferred on it by Rule 1101.

Further, the fact that the trial judge is aware of an accused's prior convictions does not automatically require that judge's recusal. *Commonwealth v. Edney, supra; Commonwealth v. Darush,* 279 Pa.Super. 140, 420 A.2d 1071 (1980); *see also, Commonwealth v. Davis,* 491 Pa. 363, 421 A.2d 179 (1980) (admission of evidence of prior convictions harmless error in bench trial since trial judge presumed to disregard inadmissible evidence).

*Commonwealth v. Hailey,* 332 Pa.Super. 167, 173, 480 A.2d 1240, 1243 (1984). We must, however, express our wariness over the notion that trial judges are presumed to disregard inadmissible evidence. Such a presumption must be applied with caution. "Statements such as these must, however, be read with care, lest we overlook the fact that judges are subject to the same emotions and human frailties as affect all persons, lay jurors or not." *Commonwealth v. Conti,* 236 Pa.Super. 488, 499, 345 A.2d 238, 244 (1975). Moreover, we reiterate that according to the lower court, the program was instituted not by the District Attorney alone but in conjunction with the President Judge. We deem this fact important because it suggests that the judiciary, with its inherent accountability to the public, has lent its approval to

this program and has not abdicated its responsibilities to the unfettered discretion of the District Attorney's Office.

Moreover, another of *Sorrell's* concerns in forbidding the prosecutor the absolute right to a jury trial was the lack of prosecutorial accountability. "Unlike Rule 1101, which provides for an impartial determination and fosters public accountability on the part of the prosecutor by encouraging him to state his position on the record, 42 Pa.C.S. § 5104(c) [ruled unconstitutional by the court] provides for prosecutorial control of the accused's motion to waive trial by jury without any provision for the prosecutor's accountability through judicial review." *Sorrell, supra,* 500 Pa. at 361, 456 A.2d at 1329. This concern has no application to the instant case. The Career Criminal Program is not the product of an undisclosed and arbitrary prosecutorial policy but is, rather, a policy instituted with the approval of the President Judge which attempts to deal effectively with a serious societal problem. The prosecution is not permitted to designate whomsoever it chooses for inclusion in the program. It can only select from among those recidivists whose previous offenses fall within certain well-defined categories. *See* note 1 *supra.* We believe that the policy underlying *Sorrell* mandates that the District Attorney's Office be *accountable* in administering this program. Although appellant has not argued this issue on appeal, inherent in our holding is the requirement that the prosecutor exercise good faith in assigning to the program only those defendants who truly fit the criteria for inclusion, and that the criteria be reasonably adapted to effectuate the stated policy of more effectively prosecuting recidivists. It is imperative that the District Attorney not be permitted to administer this program capriciously lest *Sorrell's* policy of guarding against prosecutorial unaccountability be undermined.

Furthermore, appellant alleges that he made a motion in the court below to be transferred out of the program. If we were to hold that the lower court abused its discretion in refusing to transfer appellant out of the Career Criminal

program, we would be condoning a practice of "judge shopping." In the recent case of *Commonwealth v. Kellum*, 339 Pa.Super. 513, 518, 489 A.2d 758, 760 (1985) this court wrote:

> We agree with the Commonwealth's characterization of appellant's efforts to have his case transferred out of the Career Criminal Program as an example of "judge-shopping." And it is this practice which has been held to be a valid reason for a trial court's refusal to grant a defendant a non-jury trial. *Commonwealth v. Lee*, 262 Pa.Superior Ct. 280, 396 A.2d 755 (1978). In *Commonwealth v. Garrison*, 242 Pa.Superior Ct. 509, 364 A.2d 388 (1976), this court said,
>
>> "[i]n the instant circumstances, we find that the lower court committed no abuse of discretion in denying appellant's waiver request since it was apparent that the appellant's only purpose for attempting such waiver was to maneuver for a judge he thought might be more lenient or for other reasons more desirable." *Id.* 242 Pa.Super. at 515, 364 A.2d at 390.
>
> It is apparent from the record below that this was also appellant's reason for requesting such a waiver. Nor do we feel that a colloquy was necessary to discern this. Therefore, we hold that in this case, where appellant's reason for requesting a non-jury trial was to attempt to avoid prosecution under the Career Criminal Program, such an attempt constituted "judge-shopping," and the trial court did not abuse its discretion in denying appellant's request.

Mr. Carter has had his day in court. He was tried before and convicted by a jury of his peers. We do not believe that his right to an impartial factfinder has been compromised in any way nor do we see any reason to duplicate the jury's factfinding effort by granting a new trial.

## II

Appellant's final contention is that his right to a speedy trial under Pa.R.Crim.P. 1100 was violated due to the Com-

monwealth's failure to try him within 180 days. This argument is without merit. Rule 1100 allows the Commonwealth 180 days from the filing of the written complaint to bring the accused to trial. However, any period of time resulting from the unavailability of the defendant or his attorney is excluded from the 180 day calculation Pa.R. Crim.P. 1100(d)(3)(i). In the instant case, the complaint was filed against the appellant on March 27, 1982. The mere fact that appellant was not tried within 180 days does not necessiate his discharge. "In analyzing whether an appellant's speedy trial rights have been violated for failure to bring him to trial within 180 days, we must seek guidance in authority beyond the nearest desk calendar." *Commonwealth v. Taylor*, 340 Pa.Super. 87, 94–95, 489 A.2d 853, 857 (1985). We accept the lower court's version of the facts as to this issue.

On July 8, 1982 [the judge] reduced bail and released defendant on his own recognizance.... Although upon his release defendant signed and received a copy of a subpoena ordering his appearance on August 30, 1982 in Courtroom 650, City Hall ... he failed to appear on that date....

[T]he court continued the case to September 20, 1982....
According to [the Assistant District Attorney], the Commonwealth was ready for trial on September 20, 1982, but this Court's involvement with another case that morning and the Public Defender's claim of having no one available for trial until November 1, 1982, resulted in the transfer of defendant's case to the Honorable Marvin Halbert on "back-up" status only to be returned to this Court on September 22, 1982 when Judge Halbert could not locate defendant.... At this time, because it was apparent that defendant's failures to appear were deliberate, the Court issued a bench warrant....

After learning that defendant was not yet in custody by September 27, 1982, this court issued a regular bench warrant resulting in defendant's rearrest on Friday, October 1, 1982, but because courts were closed ... Monday,

October 4, 1982 would have been the earliest possible date to hold a bench warrant hearing .... However, since the Court was in chambers that week and only learned of defendant's arrest on October 13th or 14th, a hearing was scheduled for Friday, October 15....

At this hearing, defendant testified that he left the subpoena at the prison upon his release and, therefore, forgot to appear on August 30th.... Trial was, nevertheless, scheduled for Monday, October 18, 1983....

■ Appellant contends that the delay from August 30 to September 22 was caused by the unavailability of the courtroom, and that, therefore, this period of time should be charged against the Commonwealth. Even if we were to agree with appellant's premise we must strongly disagree with his conclusion. We find that the delay was occasioned by appellant's unavailability. Thus, the delay falls within Pa.R.Crim.P. 1100(d)(3)(i) and since the period results from the unavailability of the defendant, it was properly excluded. Since the delay is not attributable to the court system, there is no need for the court to explain the delay on record. *Commonwealth v. Franklin*, 306 Pa.Super. 382, 452 A.2d 777 (1982). Moreover, by failing to appear at the designated time and place on August 30, 1982, appellant has lost any right he may have had to complain about delays in bringing him to trial. "Once the accused is subject to process of court, a willful act in dereliction of duty is a forfeiture and serves to negate any duty the Commonwealth has to exercise due dilignece in bringing him to trial." *Commonwealth v. Taylor*, 340 Pa.Super. 87, 98–99, 489 A.2d 853, 859 (1985). Thus, it has been held that the Commonwealth has no duty to exercise due diligence in bringing to trial within 180 days a defendant who has been released on bail but who fails to appear for his arraignment.

Where the defendant is on bail and has notice of his obligation to appear and fails to do so, a concept of due diligence in apprehending the fugitive is misplaced in a speedy trial analysis.

*Commonwealth v. Cohen,* 481 Pa. 349, 355, 392 A.2d 1327, 1331 (1978). The same reasoning applies to one who escapes from prison. *Commonwealth v. Taylor, supra. See also Commonwealth v. Minoske,* 295 Pa.Super. 192, 441 A.2d 414 (1982). In both *Cohen* (accused out on bail) and *Taylor* (escaped prisoner), the appellants had already been subjected to process of court. Their subsequent derelictions of duty (failing to appear for arraignment in the one case and escaping from prison in the other) served to negate any duty owed by the Commonwealth to exercise due diligence in bringing them to trial within 180 days. In the instant case, unlike *Cohen* and *Taylor,* the appellant does not allege that the delay is attributable to the prosecution, but rather to the judiciary. Nevertheless, justice requires that the same principles apply.

Importantly, we note that the Commonwealth was under no obligation to bring appellant to trial until September 23 (the 180th day after the complaint was filed). There is no dispute that appellant had not been found by September 23. A bench warrant had been issued the day before and it was not until October 1 that appellant was brought into custody. Two weeks passed before a hearing was held. The appellant shall also be responsible for these two weeks.

Assuming that the revised 180 day period was to expire on April 13, 1981 (*see* footnote 3), and that the Commonwealth waited until June to file for his extradition even though the appellant may have been "available" earlier, this entire period shall be charged to the appellant. "It is obvious that in many cases the defendant, by his unavailability, can occasion a delay which is much greater than the actual time of his unavailability. The rule charges this delay to the defendant." *Commonwealth v. Perry,* 296 Pa.Super. 359, 362, 442 A.2d 808, 810 (1982). *See also Commonwealth v. Colon,* 317 Pa.Super. 412, 464 A.2d 388 (1983).

*Commonwealth v. Taylor,* 340 Pa.Super. 87, 489 A.2d 853, 860 (1985).

Judgment of sentence affirmed.