514 A.2d 154

**COMMONWEALTH of Pennsylvania**

v.

**Reginald STINNETT, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 10, 1986.

Filed Aug. 19, 1986.

seventh votes, joined the court in its holding but would not apply the precedent retroactively.

84

Joseph N. Bongiovanni, III, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Com., appellee.

Before KELLY, MONTGOMERY and HESTER, JJ.

KELLY, Judge:

This case involves a direct appeal from judgment of sentence imposed upon the appellant, Reginald Stinnett, following a conviction in a jury trial for robbery. We find no merit in the appeal and accordingly affirm the judgment of sentence.

On the evening of February 5, 1981, Officer Edward Cottrell and three other officers of the Philadelphia Police Department were assigned to conduct a decoy operation in the area of Broad and Tasker Streets in South Philadelphia.[1] Officer Cottrell acted as the decoy and was dressed as a semi-derelict. Three police officers dressed in street clothes acted as a surveillance and back-up unit.

---

1. The decoy operations are conducted by special units commonly known as "grandpop squads." The units are assigned to particular areas based upon current crime statistics. They are designed to combat the serious problem of violent criminal assaults against the elderly and others who are less able to defend themselves.

At the west side corner of Broad and Tasker, Officer Cottrell reached into his pocket, removed a roll of bills, counted, and then returned the roll to his pocket. He then proceeded down the steps into the subway. The appellant, Reginald Stinnett, followed Officer Cottrell down the steps. At the first landing, the appellant threw Officer Cottrell against the wall, threw him to the ground, and took from his pockets four dollars ($4.00) and a roll of theatrical money. The appellant then fled up the steps to effectuate his escape. He was apprehended, however, by Officer Cottrell's back-up team.

On January 29, 1982, a jury convicted the defendant of robbery. Post-trial motions were filed and denied. On June 17, 1982, the Honorable Louis G. Hill sentenced the appellant to serve a term of imprisonment of not less than four (4) years nor more than eight (8) years. A timely notice of appeal was filed.

On appeal, the appellant contends that: 1) trial counsel was ineffective for failing to investigate sufficiently; 2) the trial court wrongly ruled that the Commonwealth could introduce the appellant's prior convictions for impeachment purposes; 3) inclusion in the career criminal program denied the appellant equal protection of laws; 4) the court improperly restricted cross-examination of the Commonwealth's witnesses; 5) the court erred in failing to declare a mistrial after a Commonwealth witness violated the trial court's sequestration order; and 6) trial counsel was ineffective for failing to preserve these issues in post-verdict motions. We shall consider the allegations *seriatim.*

I

The appellant first contends that trial counsel was ineffective for failing to adequately investigate the background of arresting officers and that of their unit to determine their predisposition for making false arrests. We cannot agree.

■ "It is undoubtedly true that a defense attorney's failure to investigate potentially meritorious defenses ... can constitute ineffective assistance of counsel if no reasonable basis exists for counsel's failure." *Commonwealth v. McNeil*, 506 Pa. 607, 616, 487 A.2d 802, 806 (1985); *accord Commonwealth v. Mabie*, 467 Pa. 464, 359 A.2d 369 (1976). However, counsel's stewardship of the trial is presumed to be effective, and the burden of establishing counsel's ineffectiveness rests upon the defendant. *McNeil*, 487 A.2d at 806; *Commonwealth v. Miller*, 494 Pa. 229, 233, 431 A.2d 233, 235 (1981); *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 608, 235 A.2d 349, 352–53 (1967).

■ It is only when the claim which has been foregone is of arguable merit that further inquiry must be made into the basis for counsel's decision not to pursue the matter. *Commonwealth v. Hubbard*, 472 Pa. 259, 278, 372 A.2d 687, 696 (1977). Trial counsel's failure to gather and marshal evidence on appellant's behalf could constitute ineffectiveness only if such evidence existed. *Commonwealth v. Pettus*, 492 Pa. 558, 563, 424 A.2d 1332, 1335 (1981).

■ In the instant case, the appellant has not disclosed what evidence counsel failed to discover and how it would have aided his cause. Such an omission is fatal to the appellant's claim. *Accord Commonwealth v. Silo*, 509 Pa. 406, 502 A.2d 173 (1985) (failure to raise unspecified supplemental post-trial motions); *Commonwealth v. Blagman*, 350 Pa.Super. 367, 504 A.2d 883 (1986) (failure to disclose testimony or even name of omitted "crucial" witness); *Commonwealth v. Polk*, 347 Pa.Super. 265, 500 A.2d 825 (1985) (failure to make offer of proof as to substance of omitted witnesses' testimony); *Commonwealth v. Scott*, 345 Pa.Super. 86, 497 A.2d 656 (1985) (failure to establish a sufficient factual predicate to support the ineffectiveness claim).

II

The appellant next contends that "the trial judge abused his discretion by permitting defendant's prior convictions

[to] be used, if he testified, to impeach his credibility...."
(Appellant's Brief at 8). However, our review of the record
reveals no such ruling by the trial court.

Prior to commencement of trial, defense counsel inquired
as to whether any of the appellant's prior convictions would
be admissible for impeachment purposes if the appellant
decided to testify at trial. After a brief discussion, the trial
judge concluded that a *Bighum*[2] hearing would be re-
quired. (N.T. at 55–59). After the jury selection process
was concluded, the trial judge conducted a *Bighum* hearing.
The trial court proceeded to weigh the facts in terms of the
balancing test announced in *Bighum, supra,* and refined in
*Commonwealth v. Roots,* 482 Pa. 33, 393 A.2d 364 (1978).

The court heard argument with respect to the first three
factors (N.T. at 238–47), then turned to the fourth prong of
the *Roots* test. A lengthy discussion of this factor appears
in the record. (N.T. at 248–261). The Commonwealth cited
our decision in *Commonwealth v. Dombrauskas,* 274 Pa.
Super. 452, 418 A.2d 493 (1980), and argued that because
the Commonwealth had only the one witness their need for
the prior conviction evidence was great. (N.T. at 250). The
Commonwealth contended that only Officer Cottrell could
testify regarding the robbery itself. (N.T. at 247–249).

Defense counsel countered that the Commonwealth had
not one, but four eyewitnesses. (N.T. at 250–252). The
trial judge indicated to defense counsel that in order to
properly balance the factors he would have to know the
defendant's version of the events. (N.T. at 255). Defense
counsel then informed the court that the defendant would
claim that: he did not rob Officer Cottrell; he was walking
down to catch a bus at Broad and Tasker; the police
officers arrested him without cause; he had not been down
the subway steps at all; and the officers knew him and had
set him up. (N.T. at 255–259).

The Assistant District Attorney Thompson then agreed
not to use the prior conviction evidence and explained:

2. *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973).

Mr. Thompson: Based on that, the Commonwealth has more than one witness. We have three or four witnesses who can say that that's not how it happened. That whatever happened took place down on the subway platform.

The Court: Then you are not pressing your request?

Mr. Thompson: No sir, based on the *Roots* criteria.

(N.T. at 260–261).

The court informed defense counsel that the prior record would not be admitted, but admonished counsel that:

If I find that your offer of proof is not in good faith because of something else that is going to be said quite different from what has been said to me now, that puts a different light on it. *Otherwise it* [the prior record evidence] *is not going to be offered.*

(N.T. at 261–262). (Emphasis added). The court explained that if the defendant later denied his presence at the scene, there would be a substantial variance with the appellant's offer of proof at the *Bighum* hearing, in which case the court would be required to reconsider the admissibility of the prior record as impeachment evidence. (N.T. at 262).

Our previous rulings that a trial judge's refusal to rule on a *Bighum* motion was the equivalent of an adverse ruling on the issue lend no support to the appellant's contention that the court wrongly permitted the prior convictions to be used. *See Dombrauskas, supra; Commonwealth v. Moore,* 246 Pa.Super. 163, 369 A.2d 862 (1977). In *Moore, supra,* the trial judge refused to make a ruling on the appellant's *Bighum* motion, but indicated that he was inclined to allow introduction of both prior convictions. In *Dombrauskas, supra,* the trial judge refused to consider a *Bighum* motion at the close of the Commonwealth's case and ordered defense counsel to proceed. In both cases the procedure utilized left the appellant so uncertain as to the prior record evidence's admissibility that the appellant was compelled to admit the prior conviction on direct examination in order to lessen its prejudicial impact.

■ In the instant case, however, the trial judge conducted a pre-trial *Bighum* hearing and made an *express* ruling in the appellant's favor. The fact that the trial court indicated to counsel that his ruling could be reconsidered does not render the ruling so indefinite as to place the matter within the *Moore-Dombrauskas* rule.[3]

The sole condition placed upon the trial judge's ruling that the prior conviction evidence would be excluded was that if the appellant decided to testify and then presented a defense substantially different than that proffered to the court in the *Bighum* hearing, the trial judge would then have to re-evaluate the *Roots* criteria in light of the new facts.

*Roots, Bighum,* and their progeny require that the trial court balance various factors in determining, essentially, whether the probative value of prior conviction evidence outweighs the risk of unfair prejudice inherent in such evidence. In striking the proper balance between competing interests the trial judge must rely upon the accuracy of counsel's statements with respect to the factors being considered. To the extent that either party makes inaccurate or unfounded assertions to the trial judge during the *Bighum* hearing, that party runs the risk that a material variance, which becomes apparent at trial, may tip the

---

**3.** We note that in *Commonwealth v. Bryant,* 247 Pa.Super. 386, 372 A.2d 880 (1977), and again in *Commonwealth v. Gonce,* 320 Pa.Super. 19, 466 A.2d 1039 (1983), this Court rejected appellant's arguments that binding evidentiary rulings were required. We stated in *Bryant* that:

> To hold that the trial judge must make a binding ruling on the admissibility of the convictions before the defense has presented any evidence would serve to remove the most crucial factor by which the judge is to be guided in making his ruling, that being whether or not appellant has any means of presenting a defense other than by taking the stand himself.

247 Pa.Superior Ct. at 391, 372 A.2d at 882–83. *See also Gonce,* 320 Pa.Superior Ct. at 35, 466 A.2d at 1047. However, we need not rely upon *Bryant* and *Gonce* in the instant case, as the trial judge's ruling was conditional rather than tentative.

balance and compel the trial judge, in the interests of justice, to reconsider the previous ruling.[4]

In reaching this conclusion we are mindful of the importance to appellant of certainty with respect to the admissibility of prior record evidence for impeachment purposes in determining trial strategy. *See Commonwealth v. Hill*, 302 Pa.Super. 377, 448 A.2d 1090 (1982) (pre-trial hearing allows defendant to more intelligently weigh his or her decision to testify at trial). However, a defendant's interest in certainty in such cases is not sufficient to compel a trial court to enforce an evidentiary ruling which is flawed by errors or omissions in the defendant's proffer to the court during the *Bighum* hearing. The defendant's own role in inducing the flawed ruling cannot be ignored.

To hold otherwise, would court subtrafuge and introduce a dangerous variable into what is already a delicate balancing process. Consequently, we find that trial judge's admonition to counsel was entirely appropriate and provides no basis for the appellant's contention on appeal. As no adverse ruling was in fact made by the trial court, the appellant's second contention on appeal is found to be without merit.

### III

The appellant next contends that his rights to equal protection of the laws and due process guaranteed by the Fourteenth Amendment were violated by the appellant's inclusion in a career criminal program. Specifically, the appellant contends that his equal protection and due process rights to a presumption of innocence were compromised when he was tried by a judge who, by virtue of the appellant's inclusion in the career criminal program, knew of the appellant's extensive prior record. We find neither legal support nor factual basis for the appellant's contentions.

4. We note that a material error or omission in the Commonwealth's proffer during the *Bighum* hearing would similarly justify reconsideration of a decision favorable to the Commonwealth.

■ The Equal Protection Clause in the United States Constitution is directed at every form of state action—legislative, executive, and judicial. *Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). It not only proscribes the enactment of discriminatory laws, but also the discriminatory enforcement of laws which are fair on their face. *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). *See Commonwealth v. Lewis,* 443 Pa. 305, 279 A.2d 26 (1971).

In *Dunn v. Blumstein,* 405 U.S. 330, 335, 92 S.Ct. 995, 999, 31 L.Ed.2d 274 (1974), the Supreme Court stated that in analyzing allegations of equal protection violations the Court "looks, in essence, to three things: the character of the classification; the individual interest affected by the classification; and the governmental interest involved."

■ In the instant case the challenged classification is based upon prior criminal conduct (prior convictions). The Equal Protection Clause prohibits differences in treatment of similarly situated persons based upon a constitutionally suspect standard (race or religion) or other classifications lacking in rational justification. *See Loving v. Virginia,* 388 U.S. 1, 9, 87 S.Ct. 1817, 1822, 18 L.Ed.2d 1010 (1967); *McLaughlin v. Florida,* 379 U.S. 184, 191, 85 S.Ct. 283, 287, 13 L.Ed.2d 222 (1964); *Skinner v. Oklahoma,* 316 U.S. 535, 541–542, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942); *see also Commonwealth ex rel. Sullivan v. Ashe,* 325 Pa. 305, 307, 188 A. 841, 842 (1937) (classifications are permissible when founded upon reason and logic; they are prohibited only when arbitrary and capricious).

Classification of criminals based upon prior criminal conduct is not new. As early as 1692 the Massachusetts Bay Colony had a recidivist statute for robbers and burglars.[5] Support for the classification of defendants based upon prior criminal conduct may be found in the Supreme Court's consistent recognition of the constitutionality of recidivist statutes and rejection of challenges predicated upon consti-

5. 96 Harv.L.Rev. 511, 521 (1982).

tutional grounds. In *Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), the Supreme Court stated:

> No claim is made here that recidivist statutes are themselves unconstitutional, nor could there be under our cases. Such statutes and other enhanced-sentence laws and procedures designed to implement their underlying policies, have been enacted in all the States, and by the Federal Government as well.... Such statutes, ..., have been sustained in this Court on several occasions against contentions that they violate constitutional strictures dealing with double jeopardy, *ex post facto* laws, cruel and unusual punishment, due process, equal protection and privileges and immunities.

385 U.S. at 559–560, 87 S.Ct. at 651 (citations omitted).

Moreover, the Supreme Court reaffirmed its recognition of the rational basis behind the classification based upon prior criminal activity when it stated:

> Tolerance for a spectrum of state procedures dealing with a common problem of law enforcement is especially appropriate here. The rate of recidivism is acknowledged to be high, a wide variety of methods of dealing with the problem exists.

*Spencer,* 385 U.S. at 566, 87 S.Ct. at 655. Consequently, we find that the classification of defendants on the basis of prior criminal conduct for heightened prosecutorial efforts under a career criminal program does not involve a suspect or arbitrary classification.

■ Nor do we find that the appellant's inclusion in the career criminal program impacts a significant interest of the appellant. While defendants in general have significant liberty interests at stake, we find no constitutionally protected right implicated by the pattern of accelerated and enhanced prosecutorial efforts which characterize an appellant's treatment under the career criminal programs. *See Commonwealth v. Carter,* 347 Pa.Super. 624, 626, 501 A.2d 250, 251 (1985) (description of the career criminal program).

■ In *Weatherford v. Bursey*, 429 U.S. 545, 561, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977) the Supreme Court held that "there is no constitutional right to plea bargain, since the prosecutor need not do so if he prefers to go to trial." Likewise, in *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977), the Supreme Court held that a defendant has "no substantive right to a particular sentence within a range authorized by statute." *See also Commonwealth v. Wright*, 508 Pa. 25, 494 A.2d 354 (1985) (because defendant has no right to a particular sentence within the statutory range, mandatory sentence within such a range affects no substantive right), *affirmed McMillan v. Pennsylvania*, —— U.S. ——, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). In *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1977), the Supreme Court stated:

A constitutional entitlement cannot be created—as is by estoppel—merely because a wholly and expressly discretionary state privilege has been granted in the past.

452 U.S. at 465, 101 S.Ct. at 2465. In light of these rulings, we find that an appellant has no substantive right in the less aggressive prosecutorial effort which is commonly afforded criminal defendants not prosecuted under career criminal programs.

Additionally, federal cases have generally held that prosecutorial discretion in law enforcement "is by its very nature exceedingly broad." *Washington v. United States*, 401 F.2d 915, 925 (D.C.Cir.1968); *See also United States v. Gainey*, 440 F.2d 290, 291–292 (D.C.Cir.1971); *Newman v. United States*, 382 F.2d 479, 480 (D.C.Cir.1967). We note particularly *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962), wherein the Supreme Court stated: "The conscious exercise of some selectivity in enforcement is not in itself a violation [of due process or equal protection]." [6]

6. Nevertheless, "the Career Criminal Program is not the product of an undisclosed and arbitrary prosecutorial policy." *Carter, supra,* 247 Pa.Superior Ct. at 626, 501 A.2d at 250.

Finally, career criminal programs address important governmental interests. The cost of incarcerating all felons for extended terms is prohibitive.[7] By identifying and prosecuting serious repeat offenders, career criminal programs concentrate prosecutorial resources on those who have proven themselves to be a greater threat to the community by their failure to learn from past contacts with the criminal justice system. Moreover, studies indicate that repeat offenders often commit crimes with greater frequency than first-time offenders.[8] Thus, the selective incapacitation policies of career criminal programs may lead to reduced crime.[9]

Based upon the foregoing discussion we find no violation of the appellant's equal protection rights based upon his inclusion in the career criminal program. *Accord People v. Peterson,* 91 Misc.2d 407, 398 N.Y.S.2d 24 (1977) (court upheld prosecution and conviction under New York career criminal program from a myriad of due process and equal protection claims); *State v. Lamp,* 59 Ohio App.2d 125, 392 N.E.2d 1090, 13 O.O.3d 173 (1977) (court upheld prosecution and conviction under Ohio career criminal program from similar due process and equal protection claims).

■■■ Appellant's main contention, however, sounds in the nature of an alleged due process violation. He argues, essentially, that he was denied his due process right to a presumption of innocence (and consequently a fair trial) when the trial judge was made aware of the appellant's

---

7. *See* J. Peterailia and P. Greenwood, *Mandatory Prison Sentences: Their Projected Effects on Crime and Prison Populations,* at 23–28 (U.S. Gov. Printing Office, Washington, D.C., 1977).

8. *See* M. Peterson and H. Braiker, *Doing Crime: A Survey of California Prison Inmates* (U.S. Gov. Printing Office, Washington, D.C., Nov. 1980); J. Peterailia, P. Greenwood, and M. Lavin, *Criminal Careers of Habitual Felons,* at 120 (U.S. Gov. Printing Office, Washington, D.C., July 1978).

9. *See* E. Chelimsky and J. Dahman, *Career Criminal Program National Evaluation Final Report* (Executive Summary) at 1–20 (U.S. Gov. Printing Office, Washington, D.C. July 1981); M. Bradbury, *Career Criminal Program: Second Year Report,* at 4 (Office of the District Attorney, Ventura, California, May 1979).

prior record by the fact of his inclusion in the career criminal program. We find no violation of the appellant's federal due process rights.

In *Spencer v. Texas, supra,* the Supreme Court found no due process violation where the *jury* was informed of the appellant's prior record in a trial involving primary charges and a habitual offender's statute. It follows, of course, that if no constitutional infirmity attaches in instances where a jury, as the trier of fact, is aware of the defendant's prior record, then certainly none exists if the trial judge who presides at a jury trial is made aware of the record. *Accord Peterson, supra,* 398 N.Y.S.2d at 33.

Moreover, it is well established in Pennsylvania that the fact that a trial judge is aware of the defendant's prior record does not automatically require recusal. *Commonwealth v. Edney,* 318 Pa.Super. 362, 464 A.2d 1386 (1983); *Commonwealth v. Darush,* 279 Pa.Super. 140, 420 A.2d 1071 (1980); *accord Commonwealth v. Davis,* 491 Pa. 363, 421 A.2d 179 (1980) (admission of prior record evidence is harmless error in bench trial since trial judge presumed to disregard inadmissible evidence).

In *Carter, supra,* which also involved an appeal by a defendant assigned to the career criminal program (although presenting different challenges), Judge Cavanaugh opined for the Court:

> [The appellant] has had his day in court. He was tried before and convicted by a jury of his peers. We do not believe that his right to an impartial fact finder has been compromised in any way nor do we see any reason to duplicate the jury's factfinding effort by granting a new trial.

247 Pa.Superior Ct. at 632, 501 A.2d at 254. This statement is equally applicable in the instant case. Moreover, it is hard to conceive of how the appellant could have been prejudiced by the court's general awareness of the appellant's prior record gained through the appellant's inclusion in the career criminal program as the information was properly presented to the court in detail during the pre-trial

*Bighum* hearing. Consequently, the appellant's third contention on appeal is found to be without merit.

## IV

The appellant next contends that the trial judge improperly limited cross-examination of police witnesses. We note initially, that the scope and manner of cross-examination are within the sound discretion of the trial court and decisions relating thereto will not be reversed on appeal absent a clear abuse of discretion or mistake of law. *Commonwealth v. Sisco*, 484 Pa. 85, 398 A.2d 955 (1979); *Commonwealth v. Schmidt*, 437 Pa. 563, 263 A.2d 382 (1970). We find no such error or abuse in the instant case.

The trial judge sustained the Commonwealth's objections to the following questions:

... how many times, if you know, has the District Attorney's office dismissed cases from the Grandpop cops because officers were lying and placing people in jeopardy when they had not committed crimes, do you know? (N.T. at 349).

Are you familiar with the cases that the District Attorney has discharged in the Grandpop Detail? (N.T. at 349).

Is this not the same unit that has been discredited numerous times in terms of its false arrests? (N.T. at 352).

The Commonwealth argued that the questions were irrelevant and impertinent in that "[t]here has never been any allegations of false arrest against this police officer or any police officer in his back-up unit." (N.T. at 352). Defense counsel argued that:

My position is that my client did not commit this particular offense. That my client is known by these police officers. That my client was set up by these officers and ordered—in order to effectuate an arrest against my client that would stick against him and that this is what happened. And that this particular unit in which this officer is in, has been known to do this sort of thing and I think the jury should be made aware of the fact.... (N.T. at 353).

However, defense counsel acknowledged that none of the allegations he was referring to had been made with respect to the police officers involved in the instant case. (N.T. at 354).

Because the questions were directed to matters which were not related to the incident involved or the parties testifying in relation thereto, we find the questions properly objectionable. Thus, the trial court acted within its sound discretion in limiting cross-examination regarding these matters.

## V

Next, the appellant contends that the trial court abused its discretion by not ruling that a prosecution witness violated the sequestration order, and in not excluding his testimony as a result of the violation. We cannot agree.

■■■ The question of whether or not a violation of a sequestration order occurred is a question of fact for the trial court and will not be overturned on appeal where the determination is supported by sufficient credible evidence. *Commonwealth v. Smith,* 464 Pa. 314, 346 A.2d 757 (1975). Likewise, it is for the trial court to determine the appropriate remedy if a violation is found. *Id.,* 464 Pa. at 320, 346 A.2d at 760.

The trial court entertained testimony from Mrs. Stinnett, the appellant's mother, to the effect that Officer Dizio had violated the sequestration order by standing at the court room doors for 10–12 minutes while a fellow police officer was testifying (N.T. at 366–369). Officer Dizio testified that: he stood by the door for less than one minute; that he did so to read a sign because his eyes were watering; and that he heard no testimony (N.T. at 369–377). Officer Dizio's testimony was corroborated by Sergeant Keaveney, who testified that Officer Dizio stood at the doors for no more than a minute and a half, and that he complained about his eyes earlier. (N.T. at 379).

■ After considering this testimony, the trial judge informed Officer Dizio that he should not come near the courtroom door and that the sequestration order was still in effect. (N.T. at 378). Although the trial judge initially ruled that he could not determine whether the order was violated (suggesting the evidence was insufficient), he ruled on the following day that no violation of the order had occurred. (N.T. at 387–393). We find no abuse of discretion in this regard. Moreover, even if we were to assume a violation occurred, we find no prejudice to the defendant caused thereby.

Officer Dizio was not called as a prosecution witness by the Commonwealth. Consequently, we are at a loss to understand the nature of the prejudice alleged by the appellant regarding the trial court's failure to order Officer Dizio's testimony excluded, as it was the defense who called him to testify. Moreover, his uneventful testimony was merely cumulative of evidence already admitted. Therefore, we find no merit in the appellant's fifth contention on appeal. *Accord Commonwealth v. Martin*, 479 Pa. 609, 388 A.2d 1361 (1979) (testimony of unsequestered witness did not harm defense); *Commonwealth v. Mokluk*, 298 Pa.Super. 360, 444 A.2d 1214 (1982) (no harm where violation was unintentional and testimony not affected); *Commonwealth v. Bellachio*, 296 Pa.Super. 468, 442 A.2d 1147 (1982) (testimony of unsequestered rebuttal witness not affected by other's testimony); *see generally Commonwealth v. Floyd*, 259 Pa.Super. 552, 393 A.2d 963 (1978) (summarizing law governing violation of sequestration orders).

## VI

■ Finally, we reject the appellant's contention that trial counsel was ineffective in failing to preserve these issues for appeal. An analysis of an ineffectiveness claim first requires us to examine the merits of the appellant's underlying claims. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977). "If the claim which counsel failed

to pursue had no merit, counsel will not be deemed ineffective." *Commonwealth v. Williams,* 314 Pa.Super. 355, 359, 460 A.2d 1178, 1180 (1983), *citing Commonwealth v. Taylor,* 491 Pa. 205, 420 A.2d 413 (1980). Each of the issues which the appellant contends prior counsel failed to pursue have been found to be without merit. Consequently, the appellant's final contention is found to be without merit as well.

For the foregoing reasons, Judgment of Sentence is AFFIRMED.