582 A.2d 690

**COMMONWEALTH of Pennsylvania**

v.

**Ronald DILIBERTO, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 13, 1990.

Filed Nov. 21, 1990.

471

---

Gary B. Zimmerman, Pittsburgh, for appellant.

Michael W. Streily, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before KELLY, FORD ELLIOTT and BROSKY, JJ.

472

BROSKY, Judge.

This is an appeal from a judgment of sentence imposed upon appellant after being convicted on a weapons offense and a drug offense. Appellant raises two questions for review; whether the demonstration during trial of a switch blade knife opening was so prejudicial that it required a mistrial or a new trial, and whether due process prevents appellant's conviction when the controlled substance he possessed was sold to him by an undercover police officer. We affirm.

Appellant was contacted by Officer Frank of the Penn Hills Police Department, acting in an undercover capacity and pursuant to information gained from an informant, and asked by Frank if he was interested in purchasing Percocet tablets. Officer Frank indicated he could sell the tablets to appellant and appellant indicated he was indeed interested in purchasing Percocets. After several conversations in which details of the exchange were being worked out, an exchange of Percocets for money was consummated. The tablets used in the exchange were acquired by Officer Frank from a drug company. During the transaction officer Frank produced a bottle of Percocets which appellant opened using a switchblade knife. At the conclusion of the deal, police officers from the Penn Hills Police Department arrested appellant. Appellant was charged with a prohibited weapons offense for possession of the switchblade knife and also possession of Percocets with intent to deliver. At trial Officer Frank, pursuant to the assistant district attorney's question, demonstrated how the knife operates by pushing a button at which time the blade sprung up in a "startling fashion." Trial counsel immediately requested a mistrial which was denied by the court. However, the court did issue a cautionary instruction to the jury. Appellant was convicted of the charges against him.

Appellant first argues that the opening of the knife at trial was inappropriate and so prejudicial that it requires a new trial. We disagree. Contrary to appellant's assertions, the demonstration of how the knife operated was not

wholly irrelevant. The demonstration tended to prove that the knife was indeed a prohibited weapon. Although it may have been unnecessary to actually demonstrate how the knife worked to prove that the weapon was a prohibited one, we cannot conclude that the demonstration would have a tendency to inflame the jury to a point that their impartiality would be questioned. As pointed out by the appellant, the weapon was used only in a utilitarian manner. It was not brandished as a weapon. Nor was appellant charged with a violent crime. The only issues before the jury with regard to the knife were whether in fact appellant possessed the knife and whether or not it was a prohibited weapon. We see no way that the demonstration of how the knife worked would have an impact on the jury's resolution of theses issues. Further, we do not see how the demonstration would affect the jury's deliberation as to whether or not he possessed the Percocets with intent to deliver. Even if the jury believed he possessed the knife we do not believe the demonstration would have inflamed the jury to a point that it would have disregard the evidence regarding the possession charge. For a similar result, see *Commonwealth v. Edney*, 318 Pa.Super. 362, 464 A.2d 1386 (1983).

■ Appellant's second argument asserts that the police involvement in the provision of the drugs for which he was found to illegally possess constitutes a violation of due process. The thrust of appellant's argument is that the police department's conduct in the present case was so involved in the actual criminal act that it constitutes outrageous conduct that offends due process. This attack on a conviction has its genesis in language of the United States Supreme Court's decision in at least *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), and perhaps other cases, however, it is noteworthy that these United States Supreme Court cases, where there has been discussed such a resolution, have not themselves actually utilized such a theory, and, in fact, these cases have resulted in the upholding of the underlying criminal conviction. Be that as it may, some cases have utilized this theory to

nullify a criminal conviction, including at least one decision by this court. However, upon review, we must conclude that the involvement in the present case is not so involved that it would rise to the level necessary to preclude conviction.

Appellant's theory was utilized by this court in *Commonwealth v. Mathews*, 347 Pa.Super. 320, 500 A.2d 853 (1985). There, the police became so intimately involved in the operation of producing methamphetamine that they became, in essence, a partner in a criminal enterprise. Further, and perhaps most importantly, they provided key services and expertise without which the methamphetamine never could have been produced. This court found under those circumstances that the involvement was so great and crucial to the actual commission of the offense that it would offend due process to allow the conviction to stand. A similar result can be found at *United States v. Twigg*, 588 F.2d 373 (3rd Cir.1978), a case upon which appellant has heavily relied. In *Twigg* a police informant contacted an associate to discuss setting up a speed laboratory. DEA agents supplied the informant with chemicals, glassware and a farmhouse in which to set up the laboratory. The agents also made arrangements with chemical supply houses to offer additional necessary chemicals to the informant. Additionally they provided expertise and assisted in solving problems in setting up the operation. The Third Circuit found the convictions precluded under the due process clause. They concluded that, in effect, the government had generated new charges against the defendant merely for the sake of pressing criminal charges against him.

In contrast, clearly the involvement by police in conduct that would be considered illegal if engaged in by a lay person is not neccessarily an impediment to a conviction. For instance, the mere purchase of narcotics by an undercover police officer, if done by a lay person, or a police officer in a non-official matter, would in itself be criminal. However, when performed by the police officer in an official capacity there is no adverse consequences to the validity of

the arrest or a resulting conviction. The engaging in such conduct is considered consistent with police duties and the "illegality" of the venture is immaterial for those limited purposes.[1]

We do not find the facts of the present case to be similar to those found in *Mathews* and *Twigg*. The police involvement was no greater than contacting appellant about his interest in dealing Percocets, pursuant to information received from an informant, and the acquisition of the Percocet tablets from a pharmaceutical outlet. The conduct neither presents a situation likely to induce an individual who was not pre-disposed to get involved in drug trafficking to involve oneself in drug trafficking activities, nor is the involvement so great that the offense occurred only through the help and enterprise of the police. Appellant indicated his willingness to traffic Percocets and, it is reasonable to conclude, could have easily proceeded to purchase Percocets from someone else had Officer Frank not offered them to appellant. The role played by the police was no different than what might have been played by any drug supplier and the offense could have easily been carried out without police involvement had appellant contacted another individual willing to supply the Percocets.

**1.** In this context, we view appellant's argument that Officer Frank violated the controlled substances act by possessing and distributing the Percocets without a license, as nothing more than a smokescreen to divert attention from the issue of relevance, whether or not appellant violated the act through his conduct. Appellant offers no case law, other than that dealing with the due process argument addressed in this opinion, to support the reasoning that a police officers violation of a criminal statute somehow offers an immunity to the accused. Clearly, the engaging of police in conduct considered illegal in a non-investigatory situation has not been considered improper in the context of an investigation.

Furthermore, as Justice Rehnquist states in *Hampton v. U.S.*, 425 U.S. 484, 490, 96 S.Ct. 1646, 1650, 48 L.Ed.2d 113 (1976), "[i]f the police engage in illegal activity in concert with a defendant beyond the scope of their duties the remedy lies, not in freeing the equally culpable defendant, but in prosecuting the police under the applicable provisions of state or federal law." (citations omitted). Of course, we offer this quote only to indicate the futility of appellant's argument, not to suggest, in the least, that Officer Frank engaged in illegal activities beyond those necessary to perform his duties.

In contrast, we find the present case more similar to two cases decided by the United States Supreme Court. *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), which may have spawned this theory, and *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976). In *Russell* a police agent investigating a methamphetamine manufacturing operation approached the suspects and indicated he wanted to get involved in that trade and offered to supply a necessary ingredient in exchange for a portion of the finished drug. He then provided the chemical ingredient. In *Hampton* the Court considered petitioner's contention that the police provided heroin through an informant to the petitioner who then sold it to the police agents. In both cases the Court found no violation of a constitutional right in upholding the convictions notwithstanding the involvement of the police. Thus, by comparing the various cases, we can conclude that where there is a substantial involvement in creating and facilitating a crime that likely would not have been committed otherwise, due process will require reversal of a conviction. However, the mere involvement of police in ascertaining an individual's intent to commit a crime and providing the opportunity for the accused to commit the crime will not offend due process. Since the involvement of the police in the present case more closely approximated that of *Russell* and *Hampton* than *Mathews* and *Twigg*, we have no difficulty in affirming the conviction.

Judgment of sentence affirmed.

KELLY, J., concurs in the result.