Charles E. McKenna, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania State Horse Racing Commission, Respondent.

Argued March 15, 1984, before Judges MacPhail, Barry and Blatt, sitting as a panel of three.

*Dennis B. Rafferty,* for petitioner.

*John B. Hannum, Jr.,* Chief Counsel, with him, *Gerald T. Osburn,* Counsel, for respondent.

OPINION BY JUDGE BLATT, June 7, 1984:

Petitioner, Charles Edward McKenna (McKenna), appeals here a decision of the Pennsylvania State Horse Racing Commission (Commission) which ordered, *inter alia,* that he divest himself of ten shares of stock in Lakelands Racing Association, Inc. (Lakelands).

Lakelands is a racing association licensed by the Commission. On August 11, 1981, the Security Bank of Erie, Pennsylvania, the transfer agent for Lakelands' stock, transferred ten shares of Class A nonvoting stock to McKenna. Prior to this, McKenna had executed an affidavit, dated July 24, 1981, which stated that, *inter alia,* he had never been convicted of any crime involving moral turpitude. A subsequent investigation, however, revealed that McKenna pled guilty to various federal criminal offenses, which included mail fraud, wire fraud, and interstate travel in a scheme to defraud, and that he received a suspended sentence and was subsequently placed on probation in the Western District of New York. Documents from the probation officer in Western New York also indicated that McKenna, while on probation, lived at 208 Bennington Road, Snyder, New York, which is the same address as the petitioner's here, and, while there, he violated his parole conditions and was then bound over to the Attorney General to serve the remainder of his sentence. The records of the probation office indicated further that McKenna's social security number is 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, which is the same social security number on the aforementioned affidavit executed by McKenna. The probation officer also supplied a pic-

ture of Charles McKenna, which was entered into the record, and which is the same McKenna known to the Commission. Security Bank, furthermore, issued a report entitled "Activity of August, 1981" for Lakelands which indicated that ten shares of the abovementioned stock were transferred on Lakelands corporate books to McKenna. On February 9, 1982, the Commission ordered McKenna to divest himself of his stock interest in Lakelands within twenty days. After a hearing on May 19, 1982, the Commission again ordered the stock divestiture, and the instant appeal ensued.

Our limited scope of review requires that we affirm an adjudication of the Commission unless constitutional rights were violated, the adjudication was not in accordance with the law, procedural rules were violated, or necessary findings of fact are unsupported by substantial evidence. *Russo v. Pennsylvania State Horse Racing Commission*, 61 Pa. Commonwealth Ct. 576, 434 A.2d 857 (1981). Substantial evidence, of course, is evidence that a reasonable mind would accept as adequate to support a conclusion. *Daly v. Pennsylvania State Horse Racing Commission*, 38 Pa. Commonwealth Ct. 77, 391 A.2d 1134 (1978).

Section 204 of the Race Horse Industry Reform Act (Act), Act of December 17, 1981, P.L. 435, *as amended* 4 P.S. §325.204, provides in pertinent part, as follows:

> (a) Whenever a transfer of stock of any licensed corporation or of any corporation . . . shall be made, there shall be filed, simultaneously, with the corporation which issued such stock the following:
>
> (1) In duplicate, an affidavit executed by the transferee stating that he is to be the sole beneficial owner thereof, and whether or not he:

    (i)   has been convicted of a crime involving moral turpitude;

\* \* \* \*

    (d)   If the appropriate commission determines that it is inconsistent with the public interest, convenience, or necessity, or with the best interest of racing generally, that any person continue to be a stockholder of record, or the beneficial owner of any interest in stock standing in the name of another in any licensed corporation or of any corporation which leases to such licensed corporation the track at which it conducts parimutuel horse racing or which owned 25% or more of the stock of the licensee, the appropriate commission shall have full power and authority to order each stockholder or beneficial owner to dispose of his stock or interest within a period of time to be specified by the appropriate commission, which period the appropriate commission shall have full power to extend.

    (e)   If the commissions shall make any order or direction as provided in subsection (d), the person aggrieved shall be given notice of the time and place of a hearing before the appropriate commission, at which time the appropriate commission will hear the person in reference thereto.

McKenna contends that the Commission lacked jurisdiction to order the aforementioned divestiture because the transfer of stock was incomplete at the time of the hearing and, therefore, he did not come within the ambit of Section 204 of the Act, 4 P.S. §325.204. Specifically, he contends that he was informed by Lakelands stock transfer agent that the transfer in question was not complete as of August 15, 1981.

This Court's limited scope of review on issues such as this, however, includes neither making findings of fact nor resolving credibility issues. *See Russo; Daly.* And the findings of the Commission indicate that, as of August 1981, ten shares of stock were transferred on the corporate books of Lakelands to McKenna. Moreover, our review of the record indicates that there is substantial evidence to support this conclusion inasmuch as the Lakelands proxy register reports and correspondence from Security Bank, both of which were introduced into evidence during the hearing, indicate that McKenna's name appeared on the corporate books in the early part of August.

McKenna next contends that there is insufficient evidence to support the Commission's conclusions concerning his prior criminal history. He argues that he did not place the social security number on his affidavit but, instead, left that part of the affidavit blank, and, furthermore, that the social security number is *not* his. He has appended to his brief a letter from the Operations Supervisor of the Department of Health and Human Services, Social Security Administration, which states, in part, that "[t]he Social Security number of Charles E. McKenna of 208 Bennington Rd., Snyder, New York, 14226 is not 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." As to this letter from the Department of Health and Human Services, this Court, when reviewing matters in its appellate capacity, is bound by the facts which have certified in the record on appeal. *See Interstate Cemetery Co. Appeal,* 422 Pa. 594, 595 n.1, 222 A.2d 906, 907 n.1; Pa. R.A.P. 1921. We may not, therefore, consider auxiliary information appended to a brief which is not part of the certified record, and, furthermore, we must decide the issues based upon the record before us. Our careful review of the record, moreover, indicates that there is sub-

stantial evidence to support the conclusion that Mc-Kenna's social security number is 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 in light of the information supplied by the probation authorities in New York and the general investigation by the Commission.

Finally, McKenna contends that he received inadequate notice of his hearing date and that we should remand for a new hearing. As is stated above, pursuant to Section 204(e) of the Act, 4 P.S. §325.204(e), McKenna is entitled to a hearing prior to being divested of his stock interest *if he chooses*. Our review of the record, however, indicates that a letter from the Commission was mailed to McKenna on February 9, 1982 ordering him to divest his stock interest in Lakelands and, *as is clearly stated in the letter,* he had ten days to petition the Commission for a hearing or the order would be deemed final. The Commission then granted an extension for a hearing until March 1, 1982, and again extended the hearing date until April 6, 1982. Finally, the Commission, *sua sponte,* by an order dated April 28, 1982, indicated that there would be a hearing on this matter on May 6, 1982. Service of this order was accepted on May 5, 1982. McKenna still asserts that he was denied adequate notice.

58 Pa. Code §165.177(b) provides, in pertinent part, that:

> In the case where a hearing is to be scheduled under any section of this subchapter, such order of notice of hearing shall be served upon the parties at least ten days in advance of the date of the hearing unless the Commission for cause stated shall specify a lesser period, or the respondents shall agree to a lesser period, or another section of this subchapter shall explicitly provide for a hearing upon shorter notice.

122

At first blush, therefore, McKenna's claim may appear to have merit. We believe and must hold, however, that he actually was afforded adequate notice inasmuch as he failed to request a hearing within ten days of the letter dated February 9, 1982. This he was clearly required to do if his rights were to be preserved, and, in failing to do this, he thereby waived his rights. Any hearing scheduled by the Commission after this, therefore, was gratuitous and, in light of the very curious sequence of events reflected in the record, was fairly conducted.

We will, therefore, affirm the order of the Commission in all respects.

ORDER

AND Now, this 7th day of June, 1984, the order of the Pennsylvania State Horse Racing Commission in the above-captioned matter is hereby affirmed.