565 A.2d 481

**COMMONWEALTH of Pennsylvania**

**v.**

**Brian SIMMONS, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 20, 1988.

Filed Oct. 27, 1989.

Leonard N. Sosnov, Asst. Public Defender, Philadelphia, for Simmons, appellant.

Joann Verrier, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CIRILLO, President Judge, and BROSKY, McEWEN, DEL SOLE, MONTEMURO, BECK, TAMILIA, POPOVICH and JOHNSON, JJ.

JOHNSON, Judge.

A jury convicted Brian Simmons of felony third degree robbery and criminal conspiracy. The Honorable Stanley L. Kubacki sentenced Simmons to a term of imprisonment. Simmons filed this direct appeal *pro se,* seeking a plenary review of the Career Criminal Program operated by the District Attorney's Office in and for Philadelphia County.

The sole issue properly before us is whether Judge Kubacki committed error in denying a pretrial Motion for Recusal and To Declare Career Criminal Program Null and Void. The motion is one that was being filed in all cases assigned to the Career Criminal Program involving the Defender Association of Philadelphia at the time this case reached trial status. Our review of the suppression hearing transcript, the Motion for Recusal, etc., and the briefs of the parties does not disclose any error by the trial judge. Accordingly, we affirm the judgment of sentence.

It is as important to point out what this case is *not* about as it is to recognize what Simmons now urges this court to review. No complaint is advanced that any error was committed by the distinguished trial judge, either in his rulings during trial or in his charge to the jury. The sentence is not under attack. Neither jury selection nor the conduct of the prosecutor during trial has been questioned.

We find no error in Judge Kubacki rejecting the motion for recusal. A party seeking the disqualification of a trial judge has the burden of producing evidence tending to show bias, prejudice or unfairness by the judge. *Commonwealth v. McQuaid,* 273 Pa.Super. 600, 609, 417 A.2d 1210, 1215 (1980). At the hearing on the motion on October 13, 1987, Simmons offered no evidence to establish bias or

prejudice by Judge Kubacki. The entire proceeding on the recusal/career criminal program motion is set forth on less than five pages of the fifty-six page suppression hearing transcript.

At that hearing, the following colloquy between Judge Kubacki and Robert Jovanov took place:

THE CRIER: This is the case of the Commonwealth versus Brian Simmons.

MR. JOVANOV: Your Honor, basically—Your Honor, I would direct—the motion is for recusal and to declare the Career Criminal Program noll [sic] and void. It is a motion that we file on all our cases that are in the Career Criminao [sic] Program.

THE COURT: I know.

\* \* \* \* \* \*

MR. JOVANOV: .... I would ask Your Honor to have this case randomly sent to 625 today. I am available today to go try it if it is sent out to another Judge. But it should not be before a Career Criminal Judge. *There is a possibility there might be a waiver.* It is before Your Honor at this point in time. *Your Honor knows* because it is in a career criminal room, *that there are at least two prior robbery convictions,* effectively eliminating my client's—

THE COURT: *I didn't know that until just now.*

MR. JOVANOV: Your Honor, the guidelines say very clearly if it is a career criminal, there has to be a prior criminal record. It can't be here for any reason, Your Honor knows that.

THE COURT: *I never read the rules they promulgated and I don't want to read them.*

MR. JOVANOV: It is here because he has a prior criminal record. I ask you to send it back and have it randomly reassigned. It doesn't belong here, Your Honor is sitting as a Career Criminal Judge. It is a career criminal courtroom. It belongs somewhere else.

THE COURT: *I use the same standards, the same rules of evidence, everything. I honestly don't know why we have the Career Criminal Program.*

Notes of Testimony, "Motion to Suppress" [sic], October 13, 1987, pages 2–4 (emphasis added).

In his Summary of Argument, Simmons asserts that: the only available factfinder was a judge who was aware of information so prejudicial that it has been said to strip a defendant of the presumption of innocence.

Brief for Appellant, page 6. This simply is not true.

First, the factfinder in this case was a *jury* of twelve persons, none of whom were aware of any information other than that presented at trial. Second, based upon the certified record filed with this court, the trial judge only became aware of Simmons' recidivism as a result of statements made by defense counsel at the hearing on recusal held October 13, 1987.

We find nothing in this record to support Simmons' charge that the trial judge had prejudicial information about the defendant before trial. Although an order setting a hearing "on the within motion" was received by the Clerk of Quarter Sessions on September 29, 1987, the Motion for Recusal and To Declare Career Criminal Program Null and Void was not filed of record until October 20, 1987 along with Simmons' post-verdict motions. Our reading of the above excerpt from the proceedings held on the first day of trial persuades us that Judge Kubacki became aware of Simmons' status as a "career criminal" only after Simmons, himself, through his counsel, placed the issue before the court. We therefore reject the allegation that: the information was disclosed to the trial judge because of Court Administration's intentional creation of a system of three designated "career criminal judges."

Brief for Appellant, page 9.

It is clear that the jury had absolutely no information concerning Simmons' status at time of trial. It is equally clear that Judge Kubacki only became aware of Simmons'

prior convictions as a direct result of Simmons' counsel introducing this information during the pre-trial recusal hearing. We conclude that Simmons has failed to lay an adequate factual predicate to permit our court to assume prejudice for review purposes. *Commonwealth v. Edney*, 318 Pa.Super. 362, 464 A.2d 1386 (1983).

■ Simmons contends that the trial court violated his right to a non-jury trial under Pa.R.Crim.P. 1101, arguing that his case was taken from the "random assignment" system and assigned to a "career criminal judge" who was aware of the serious nature of his criminal record. Simmons argues that the rejection of his recusal motion, coupled with his inability to be transferred from the program, deprived him of the choice to have a non-jury trial. We cannot agree.

■ Rule 1101 requires an affirmative request, in writing, by a defendant wishing to waive a jury trial. At no time did Simmons request a waiver either orally or in writing. We reject the suggestion that the knowledge of the trial judge precluded Simmons' exercise of choice since the assumption upon which the suggestion is based is factually incorrect. Moreover, the right to a bench trial is not absolute. *Commonwealth v. Sorrell*, 500 Pa. 355, 456 A.2d 1326 (1982); *Commonwealth v. Carter*, 347 Pa.Super. 624, 501 A.2d 250 (1985).

■ We have concluded that Simmons' rights under Pa. R.Crim.P. 1101 have not been violated, and that Judge Kubacki did not abuse his discretion in rejecting the motion for recusal. Appellant urges us to consider further whether previous decisions by this court involving the career criminal program have been wrongly decided, and whether the career criminal program, as institutionalized in Philadelphia County, should have any place in the administration of justice. Appellant urges this court to review and evaluate the program guidelines heretofore established within the District Attorney's Office. This, we decline to do.

Our supreme court has instructed us that the formal purpose of the Superior Court is to maintain and effectuate the decisional law of the Supreme Court of Pennsylvania as faithfully as possible. *Commonwealth v. Dugger*, 506 Pa. 537, 545, 486 A.2d 382, 386 (1985). No right of review exists in the Superior Court except as expressly authorized by statute. This court lacks authority to review the work of an inferior tribunal, as on certiorari, where there is no statutory right of appeal. We do not possess the powers of the Court of King's Bench. *Commonwealth v. Harris*, 409 Pa. 163, 171–174, 185 A.2d 586, 590 (1962), *citing Bell Appeal*, 396 Pa. 592, 597 *et seq.*, 152 A.2d 731, 734 *et seq.* (1959). We, ourselves, have recognized that the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, as amended, 42 Pa.C.S. § 101 *et seq.* does not give this court any broad discretionary power of review. *Toll v. Toll*, 293 Pa.Super. 549, 553–554, 439 A.2d 712, 714–715 (1981) *affirmed per curiam* 498 Pa. 536, 448 A.2d 1379 (1982).

We are here presented with an appeal taken from the judgment of sentence where no attack is made upon either the sentence itself or any of the trial proceedings leading up to that sentence. Simmons argues that, although he finds no error in the trial proceedings or the conduct of the trial by the judge, he was a victim of certain rules or procedures of the district attorney which somehow forced him to appear before one judge rather than another judge.

We view this portion of the appeal as an attack upon the procedure alleged to have been in existence in the court of common pleas. As such, we conclude that the appeal can only be heard, if at all, by the Supreme Court of Pennsylvania, under that court's general supervisory and administrative authority over all the courts as found in Article 5, Section 10 of the Pennsylvania Constitution.

This court lacks authority to direct the Office of the District Attorney to establish guidelines for the Career Criminal Program as a condition to its continued existence. We decline therefore to delve into the reasons which the

Commonwealth might have for Simmons' inclusion in the program.

Apart from labeling Judge Kubacki a "career criminal" judge in Paragraph 1 of the late-filed Motion for Recusal, there are no factual allegations concerning the distinguished trial judge. Moreover, since this appeal makes no claim that the trial, itself, was anything but fair and impartial, any alleged disqualifying factors of the trial judge would have become moot. *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority*, 507 Pa. 204, 223, 489 A.2d 1291, 1300 (1985).

We recognize that the Superior Court has, in the past, entertained appeals that caused the court to consider Philadelphia's Career Criminal Program. *Commonwealth v. Vinson*, 361 Pa.Super. 526, 522 A.2d 1155 (1987); *Commonwealth v. Stinnett*, 356 Pa.Super. 83, 514 A.2d 154 (1986); *Commonwealth v. Carter*, 347 Pa.Super. 624, 501 A.2d 250 (1985), *allocatur denied*, 517 Pa. 591, 535 A.2d 81 (1987); *Commonwealth v. Kellum*, 339 Pa.Super. 513, 489 A.2d 758 (1985); *Commonwealth v. Hailey*, 332 Pa.Super. 167, 480 A.2d 1240 (1984). Each of those cases, however, involved a specific allegation of the deprivation of certain rights, such as due process and equal protection, as well as Pa.R.Crim.P. 1100. We reject any attempt to relitigate those claims through this appeal.

Nor will we attempt to analyze Simmons' *admission* into the Career Criminal Program, solely on the grounds that the issue involves matters of sufficient importance to warrant *en banc* argument. We are asked to consider the "viability" of the program in light of this court's decision in *Commonwealth v. Carter, supra.*

The viability of the program in the abstract is beyond the jurisdiction of this court. What the appellant here asks us to do, by reviewing the reasons for recommending the appellant for inclusion in the Program, is precisely the type of usurpation of the Supreme Court's administrative power which was so roundly condemned in *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority*,

*supra.* We find nothing in either *Commonwealth v. Lutz,* 508 Pa. 297, 495 A.2d 928 (1985) or *Commonwealth v. Sorrell,* 500 Pa. 355, 456 A.2d 1326 (1982)—both decisions of our supreme court—which authorizes us to *extend* the rulings in those decisions while engaging in intermediate appellate court rule making.

Because the only issue of trial court error placed before us has been reviewed and rejected, and because we conclude that the broad issue of the viability of a trial court administrative procedure is—on the facts now before us—beyond our purview, we affirm the judgment of sentence.

BROSKY, J. joins and files a concurring opinion.

BECK, J. files a concurring statement.

TAMILIA, J. concurs in the result.

POPOVICH, J. files a dissenting opinion.

BROSKY, Judge, concurring.

I join Judge Johnson's Opinion. I write separately only to add the following observation.

Appellant urges us to consider a memorandum which established guidelines for the selection of cases for the Career Criminal Program in Philadelphia County. This memorandum was purportedly prepared by then Chief of the Career Criminal Unit, Ronald D. Castille, of the Philadelphia County District Attorney's Office. This memorandum appears only as an exhibit attached to appellant's original panel brief filed with this court. It does not otherwise appear as part of the record certified to us.

By considering this memorandum, we would be taking the bold step of creating, at least by implication, a new rule of appellate procedure which would permit an appellate court to consider a matter dehors the record to form the basis of its decision. Such a procedure, in my view, is contrary to the settled jurisprudence of this Commonwealth and is beyond the scope of authority vested in this Court by the Constitution. In its current posture, i.e., as an exhibit

appended to appellant's Brief, the memorandum cannot legally serve as the vehicle through which appellant now seeks a determination on the merits.

Only the original papers filed in the lower court, including any transcripts, and the certified copy of docket entries constitute the record on appeal. Pa.R.App.P. 1921. Appellate courts are bound by the duly certified record in rendering their decisions. *See Commonwealth v. Young*, 456 Pa. 102, 317 A.2d 258 (1974). Moreover, and relevant to the instant matter, the courts of this Commonwealth have determined that auxiliary information appended to the briefs of the parties falls outside the scope of appellate consideration. *Society Hill Towers Owners Ass'n v. Matthew*, 306 Pa.Super. 13, 451 A.2d 1366 (1982); *McAllonis v. Pryor*, 301 Pa.Super. 473, 448 A.2d 5 (1982); *McKenna v. Commonwealth, State Horse Racing Comm'n*, 83 Pa.Commw. 116, 476 A.2d 505 (1984). *See also Woolard v. Burton*, 345 Pa.Super. 366, 498 A.2d 445 (1985) (copy of proceedings in another matter appended to appellate brief not considered by court in rendering its decision because not of record in trial court). *Cf. In re Estate of Brockerman*, 332 Pa.Super. 88, 480 A.2d 1199 (1984) (appellate court barred from considering material not filed of record even if contained in reproduced record); *Pittsburgh's Airport Motel, Inc. v. Airport Asphalt & Excavating Co.*, 322 Pa.Super. 149, 469 A.2d 226 (1983) (document not filed of record does not become a part thereof by mere expedient reproduction).

This court has not been given, either expressly or by implication, a mandate to promulgate rules governing appellate procedure. Instead, this power has been vested by constitutional fiat in the Supreme Court of this Commonwealth. *See* Pa. Const. art. 5, § 10(c).

For the above reasons, I concur and join the majority.

BECK, Judge, concurring:

The principal issue presented by this case is whether appellant is entitled to a new trial on the ground that the prosecution refused to disclose why appellant was assigned

to the Career Criminal Program. Appellant argues that in order to promote openness and accountability, the Philadelphia District Attorney's Office should be required to provide all defendants with a statement of reasons why they have been included within the Career Criminal Program. Much could be said in favor of requiring such a statement of reasons, at least where the prosecutor's decision to label the defendant a career criminal resulted in the defendant being tried before a special judge assigned to handle career criminal matters. I agree with the majority, however, that this court lacks the authority to implement such a requirement. If we were to direct that the District Attorney provide a statement of reasons in every case as a precondition for assigning a defendant to the Career Criminal Program, we would in effect be promulgating a new rule of criminal procedure, an exclusive function of the Pennsylvania Supreme Court. The remedy that the appellant seeks must be provided by the Pennsylvania Supreme Court, or not by any court.

It should be emphasized, however, that this court has both the authority and the responsibility to consider challenges to the placement of specific individuals in the Career Criminal Program when those challenges are based on purported violations of existing rules of criminal procedure or of statutes or of the federal or state constitution. Prosecutorial discretion is not unfettered. *Commonwealth v. Pittman*, 515 Pa. 272, 279–82, 528 A.2d 138, 142–43 (1987) (citing *United States v. Batchelder*, 442 U.S. 114, 124–26, 99 S.Ct. 2198, 2204–05, 60 L.Ed.2d 755 (1979)). For example, the equal protection clause prohibits selective enforcement of the criminal laws "based upon an unjustifiable standard such as race, religion or other arbitrary classification." *Id.* Moreover, the presence or absence of a statement of reasons may be of crucial importance in determining whether a challenge to a prosecutor's actions under the equal protection clause has merit. In this regard, the United States Supreme Court's opinion in *Batson v. Ken-*

*tucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), is instructive.

In *Batson*, the Court addressed a claim that the prosecutor had violated the equal protection clause by exercising peremptory challenges in a racially discriminatory manner. The Court held that in order to prevail on this claim, the defendant has the initial burden of establishing a prima facie case of racial discrimination. If the defendant makes a prima facie showing of discrimination, the burden then shifts to the prosecution to "articulate a neutral explanation", 476 U.S. at 98, 106 S.Ct. at 1724, i.e., provide a statement of reasons, in order to rebut the inference of invidious discrimination. Unless the prosecution comes forward with a persuasive statement of permissible reasons for his jury selection decisions, the defendant is entitled to relief, and if the trial court wrongfully denies relief, an appellate court must order a new trial. *See generally Commonwealth v. Jackson*, 562 A.2d 338 (Pa.Super.1989) (en banc) (plurality).

*Batson* demonstrates that the equal protection clause limits the prosecution's ability to select jurors. I think it is clear that the equal protection clause also limits the prosecution's ability to select judges. At the time of appellant's trial, assignment to the Career Criminal Program resulted in the trial being handled by a special Career Criminal Program judge. If appellant had come forward with evidence indicating that he was assigned to the Career Criminal Program on the basis of race, or religion, or some other forbidden consideration, I would find that the prosecution was obliged to supply a statement of reasons to rebut the inference of discrimination. Moreover, if the prosecution failed to supply such a statement of reasons, a new trial would be in order even if the Career Criminal Program judge were clearly not biased against the defendant. The selection of a decision maker by a means that violates the equal protection clause is prejudice per se. A black defendant who qualifies for relief under *Batson* could not be

denied a new trial on the grounds that the all white jury that tried him was fair and impartial.

Similarly, a defendant who is assigned to the Career Criminal Program on the basis of an unjustified standard could not be denied a new trial on the grounds that the Career Criminal judge was fair and impartial.

In the instant case, however, I agree with the majority that the appellant's judgment of sentence must be affirmed. Appellant asserts in his brief that his selection for the Career Criminal Program violated the equal protection clause. Yet, appellant has not come forward with evidence that supports an inference that the prosecution engaged in any form of invidious discrimination. Appellant claims only that his selection for the program was "arbitrary", and he relies on the fact that he would not have qualified for the Career Criminal Program under a set of internal guidelines established by the Philadelphia District Attorney's Office that was not in effect at the time of his trial. Under these circumstances, I see no reason to disturb appellant's conviction. I therefore concur in the result reached by the majority.

POPOVICH, Judge, dissenting:

I cannot join in the Majority's rationale for disposing of the instant case. Accordingly, I submit this Dissenting Opinion as a response to the appeal from the judgment of sentence for robbery and criminal conspiracy by the appellant, Brian Simmons.

The sole issue raised for review concerns a challenge to the appellant's inclusion into the Career Criminal Program operated by the Philadelphia District Attorney's Office, the object of which was to curb recidivism by assigning those defendants meeting the Program's profile of career criminals to one of three "career criminal judges".[1]

1. It is the Commonwealth's position that a January, 1988 directive by the Pennsylvania Supreme Court, reorganizing the criminal division of the Court of Common Pleas of Philadelphia County, has resulted in a discontinuance of career criminal cases being funnelled to designat-

It is the appellant's contention that such a Program violated his due process and equal protection rights under the United States and Pennsylvania Constitutions, as well as denying him the right to a non-jury trial under Pa.R. Crim.P. 1101. Moreover, the appellant protests that, even if this Court were to condone the use of the Program, his conviction would have to be reversed because the prosecutor never demonstrated that the robbery charge lodged against him (graded as a felony of the third degree following a preliminary hearing) fit within any of the Program's established guidelines set forth in a Memorandum dated 1/19/83 from Philadelphia's District Attorney's Office,[2]

ed judges, even though the practice of assigning a particular prosecutor to handle a career criminal case from pre-trial on through to sentencing has been retained. See Commonwealth's Supplemental Brief at 7, n. 3. Because the appellant assails the practice of the Philadelphia District Attorney's Office in effect prior to the implementation of this supposedly new procedure, his argument must be viewed in light of the circumstances attendant to his prosecution and not any new practice brought into effect *post hoc.*

2. This is consistent with the record created at the October 13, 1987, pre-trial hearing held to resolve the appellant's motion seeking recusal of the trial judge and a declaration that the Career Criminal Program be labeled null and void. In particular, counsel for the appellant stated the basis for the motion as follows:

... the district attorney promulgated a set of rules and standards for the Career Criminal Program. In those rules and standards, the last published notice is one dated 1–19–83.

It specifically excludes from the Career Criminal Program in Section 5, Subsection "C", robberies which involve the violation of 18 Purdon's Statutes 3701A15. That is the physical taking or removing of property from the person of another, by force, however slight, will be eliminated from the Career Criminal Program.

The case of *Commonwealth v. Carter* states that one reason that the Career Criminal Program has been upheld by the Supreme Court is that there is a published or printed list of standards for the program. That by adhering to those standards, the district attorney can keep the Career Criminal Program. Those standards say this case does not belong in this courtroom before a Career Criminal Judge.

\*    \*    \*    \*    \*    \*

... It is before Your Honor at this point in time. Your Honor knows because it is in a career criminal room, that there are at least two prior robbery convictions....

(N.T. 3 and 4)

In addition to counsel for the appellant's remarks as to the initiation of the Program's guidelines and why his client should not be included

and, as such, constituted an "arbitrary and capricious" exercise of the prosecutor's "discretion" in deciding what cases to include in the Career Criminal Program. See Appellant's Brief at 17.

The appellant concedes, as he must, that this Court has had occasion in the past to reject assaults on Philadelphia's Career Criminal Program brought under the umbrella of due process and equal protection, in addition to Rule 1101. See *Commonwealth v. Vinson*, 361 Pa.Super. 526, 522 A.2d 1155 (1987) (Restricting the pool of judges who may hear cases does not create bias in the presiding judge, nor does it limit the opportunity for a non-jury trial); *Commonwealth v. Stinnett*, 356 Pa.Super. 83, 514 A.2d 154 (1986) (Equal protection and due process claims); *Commonwealth v. Carter*, 347 Pa.Super. 624, 501 A.2d 250 (1985), allocatur denied, 517 Pa. 591, 535 A.2d 81 (1987) (Due process and Rule 1101 claims); *Commonwealth v. Kellum*, 339 Pa.Super. 513, 489

therein, we have this Court's *Commonwealth v. Carter*, 437 Pa.Super. 624, 501 A.2d 250 (1985), allocatur denied, 517 Pa. 591, 535 A.2d 81 (1987), decision, mentioned specifically by counsel for the appellant and relied upon by all parties and the court below to buttress their respective positions.

In *Carter*, a panel of this Court discussed in footnote 1 some of the criteria formulated by the District Attorney prompting an accused's insertion into the Career Criminal Program; *viz:*

For example, 1983, a defendant could be included in the program if he had been convicted three times of certain classes of homicide, rape, burglary, involuntary deviate sexual intercourse, and aggravated assault, or had been twice convicted of robbery. The District Attorney also considered the remoteness of the prior convictions in deciding whether an accused should be given career criminal treatment.

The justification by the assistant district attorney for his decision to assign the appellant into the Program, because of its absence from the *record*, is the impetus for this writer's Dissenting Opinion.

Further, a review of the record and briefs of all the parties indicates that, albeit the Philadelphia District Attorney's Office may have been required to alter its Career Criminal Program, with respect to assigning such cases only to one of three selected judges to participate in the Program (see note 1, supra), there is no identifiable set of criteria looked to by the Philadelphia District Attorney's Office in making its assessment of when an accused is a candidate for submission into the Career Criminal Program. What criteria it looks to, and, in particular, what standard was utilized in the appellant's case, will be the subject of discussion infra.

A.2d 758 (1985); *Commonwealth v. Hailey*, 332 Pa.Super. 167, 480 A.2d 1240 (1984).

This day, the appellant proffers no new argument which would cause this writer to alter any of the previous decisions upholding the propriety of the Career Criminal Program in Philadelphia.

For example, the appellant protests that his inclusion in the Program, a condition of admission being a prior criminal record, prejudiced him in the eyes of the pre-trial judge, who also presided at his jury trial.

I would note, at the outset, that during the pre-trial hearing, seeking recusal and a declaration that the Program be declared null and void, the judge stated that he was unaware of the appellant's two prior robbery convictions until they were made known to him through appellant's counsel's argument that day. Further, the pre-trial judge admitted to being ignorant of the existence and substance of the rules promulgated by the District Attorney with respect to inclusion of a defendant into the Program, and, in fact, he saw no need for the Program since he applied "the same standards, the same rules of evidence, everything[,]" in his courtroom without exception to whether an accused was in or out of any career criminal program.

Thus, we do not have a situation in which a judge, exposed to prejudicial information, is unable to distance himself/herself from the disclosure so as to be fair and impartial in his/her rulings. See *Commonwealth v. Davis*, 491 Pa. 363, 371–72 n. 6, 421 A.2d 179, 183 n. 3 (1980) ("A judge, as a factfinder, is presumed to disregard inadmissible evidence and consider only competent evidence."); see also *Stinnett*, supra, wherein this Court rejected a due process argument by reasoning that the mere fact that a trial judge is aware of a defendant's prior record does not automatically render him biased.

Moreover, a review of the record does not establish any support for the appellant's contention that the denial of his pre-trial motion and trial court evidentiary rulings were

tainted by the presiding judge's exposure to his prior criminal record. This assertion is specious, especially in the latter case given the fact that he was tried and convicted by a jury of his peers. In the same vein, the appellant's argument that he was effectively denied his right to a non-jury trial, under Rule 1101, by his assignment to the Career Criminal Program is untenable since a similar assertion was made and denied by this Court in *Carter*, supra.

In *Carter*, a panel of this Court found that one's designation to the Career Criminal Program of Philadelphia does not foreclose the individual his "right" to a non-jury trial where the trial judge knows of his prior convictions because " 'an accused does not have an absolute right to a bench trial.' " 347 Pa.Super. at 627, 501 A.2d at 251, quoting *Hailey*, supra, 332 Pa.Super. at 172–73, 480 A.2d at 1242–43 and citing *Commonwealth v. Sorrell*, 500 Pa. 355, 456 A.2d 1326 (1982). Rather, we pointed out, by quoting the United States Supreme Court in *Singer v. United States*, 380 U.S. 24, 36, 85 S.Ct. 783, 790, 13 L.Ed.2d 630 (1965), that: " 'A defendant's only constitutional right concerning the method of trial is to an impartial trial by jury.' " 347 Pa.Super. at 628, 501 A.2d at 252. This was afforded the appellant.

As for the appellant's claim of being the object of unequal treatment with his induction to the Career Criminal Program, I find that its objective of attempting to control recidivism is laudable and does not smack of equal protection violations. See *Carter*, supra. To the extent that the appellant may have received a "harsher" sentence than that meted out to other criminals is more the result of the circumstances attendant to the appellant's criminal behavior and past criminal predilections, and less the by-product of assignment to the Career Criminal Program. The appellant has presented no evidence to substantiate his allegation, save for his own self-serving remarks that ring hollow under scrutiny. If it were otherwise, the appellant's recourse would be to challenge the sentence as violative of the statutorily created factors (supplemented by case law) to be weighed by a judge when formulating the type and

length of punishment under the Sentencing Code. No such course was pursued by the appellant at bar.

No more persuasive is the appellant's averment that his referral to the Career Criminal Program was tantamount to the prosecution being permitted to "judge-shop", and, therefore, effectively precluding him from choosing to proceed non-jury before a jurist devoid of knowledge of his prior criminal history.

Because I would find the appellant's recusal and Rule 1101 contentions to be wanting, I am not inclined to label the prosecutions efforts to "curb" recidivism the equivalent of "judge-shopping". The selection of the three judges who at any one time made up the Program, the inception and implementation of which was through the joint effort of the President Judge and the District Attorney's Office of Philadelphia County, are not viewed by this Court as a method of assuring the harshest possible sentence be issued against repeat offenders. As just stated previously, the avenue to seek redress of the punishment imposed would be via the Sentencing Code, augmented by the Pennsylvania Rules of Criminal Procedure and not under the banner of prosecutorial "judge-shopping".

The last of the appellant's objections, which questions his admission into the Career Criminal Program, was considered to "involve matters of sufficient importance" by this Court to warrant having the case argued *en banc*, with particular attention to be given by all parties to the "viability" of the Program in light of this Court's decision in *Commonwealth v. Carter*, supra.

Albeit the Commonwealth informs us that the Pennsylvania Supreme Court's reorganization of the Philadelphia criminal court system, in January of 1988, rendered the continued use of the "career criminal judges" impractical, the Program still exists to the extent that one prosecutor is relegated the task of handling a career criminal's case from the pre-trial stage to sentencing. This modification of the Program's "jurist" feature, however, does not dispense with our initial inquiry as to the Program's continued operation,

especially with regard to the use and/or existence of guidelines to formulate whether an accused is a candidate for the Program.

It is the position of the appellant that the charge of robbery, which was graded a felony of the third degree by the preliminary hearing judge,[3] did not come within the perimeters of the 1983 guidelines, nor did the prosecution show any criteria that would place his case within the Program. As a result, his inclusion in the Program must be deemed arbitrary and capricious, and a violation of his rights to due process and equal protection of the law. In support of such an assertion, the appellant directs us to *Commonwealth v. Carter,* supra. There, in sustaining the Career Criminal Program against constitutional attack, we observed that our Supreme Court's concern and ultimate ruling of unconstitutionality of 42 Pa.C.S. § 5104(c) in *Commonwealth v. Sorrell,* supra, because of a lack of prosecutorial accountability in stating on the record his reasons for exercising his absolute right to a jury trial pursuant to Section 5104(c), was lacking in *Carter.* We stated our reasons as follows:

> The Career Criminal Program is not the product of an undisclosed and arbitrary prosecutorial policy but is, rather, a policy instituted with the approval of the President Judge which attempts to deal effectively with a serious societal problem. The prosecution is not permitted to designate whomsoever it chooses for inclusion in the program. It can only select from among those recidivists

---

**3.** The transcripts reveal that the appellant, with the aid of a cohort, took hold of one Alex Glen Smith and threatened to "make it difficult" if he did not part with his money. The victim relinquished the $50 he had on his person, and, when efforts to retrieve his money proved fruitless, the police were notified of the incident. Once the appellant was arrested on the "positive" identification of the victim, a preliminary hearing was held in which the simple assault and reckless endangering another person charges were removed by the judge. However, the appellant was held for court on the charges of robbery, which had been listed as a felony-two by the police on the arrest report, but was reduced to felony-three by the judge. The other charges carried over for trial were theft, receiving stolen property, conspiracy and terroristic threats. However, it appears only the offenses of robbery and criminal conspiracy were heard by the jury.

whose previous offenses fall within certain well-defined categories. *See* note 1 *supra.*[*] We believe that the policy underlying *Sorrell* mandates that the District Attorney's Office be *accountable* in administering this program. Although appellant has not argued this issue on appeal, inherent in our holding is the requirement that the prosecutor exercise good faith in assigning to the program only those defendants who truly fit the criteria for inclusion, and that the criteria be reasonably adapted to effectuate the stated policy of more effectively prosecuting recidivists. It is imperative that the District Attorney not be permitted to administer this program capriciously lest *Sorrell's* policy of guarding against prosecutorial unaccountability be undermined.

---

[*] 1. For example, in 1983, a defendant could be included in the program if he had been convicted three times of certain classes of homicide, rape, burglary, involuntary deviate sexual intercourse, and aggravated assault, or had been twice convicted of robbery. The District Attorney also considered the remoteness of the prior convictions in deciding whether an accused should be given career criminal treatment.

347 Pa.Super. at 631 & n. 1, 501 A.2d at 253–54 & n. 1 (Emphasis in original). From the preceding, the appellant draws his conclusion that the prosecution's failure to supply him with a set of criteria, utilized in the formulation of its decision to make assignments to the Career Criminal Program, is contrary to the teaching of *Carter* and justifies a reversal of his conviction and judgment of sentence.

The prosecution retorts that *Carter* was preoccupied with making sure "the defendant's placement into the [P]rogram be reasonably related to the laudable goals of more effectively prosecuting recidivists", rather than requiring, as a condition to the Program's validity, the prosecution's documentation of the formula for assigning an accused to career criminal status. Further, it asserts, in no other instance in which the prosecution is permitted to exercise its discretion, be it in the context of mandatory minimum sentencing, accelerated rehabilitative disposition or death penalty cases, is it required that "individual prosecutors' offices detail what types of consideration they will factor into [a] deci-

sion" of whether to act in a particular situation. See Appellee's Supplemental Brief at 11–12. I believe the case to be otherwise and look to our Supreme Court's decisions in *Commonwealth v. Lutz,* 508 Pa. 297, 495 A.2d 928 (1985) and *Sorrell,* supra, as the underpinnings for my views of prosecutorial accountability and the documentation of the same, on the record, in assessing a challenge to the exercise of prosecutorial discretion.

In *Lutz,* the Court held that district attorneys, under rules pronounced by it, would be the sole arbiters of whether to move for admission of a defendant to ARD. In the case of motor vehicle violations, the statute only provided for who may *not* be admitted to ARD, while the *Comment* to Pa.R.Crim.P. 175–185 left it to the district attorney's discretion as to which crimes he wished to prosecute.

Because the judgment about who could benefit from ARD, which was a relevant factor, in conjunction with the restrictions set out in 75 Pa.C.S. § 3731(d) (concerning persons who may not be admitted to ARD), was a subjective process resting in the sound discretion of the district attorney, the Court remarked:

> This judgment, in turn, rests in the sound discretion of the district attorney. Such discretion, of course, is not without limitation, and, as is indicated by Professor David in *Discretionary Justice,* may be usefully circumscribed by a requirement of openness:
>
> > The seven instruments that are most useful in the structuring of discretionary power are open plans, open policy statements, open rules, open findings, open reasons, open precedents, and fair informal procedure. The reason for repeating the word "open" is a powerful one: Openness is the natural enemy of arbitrariness and a natural ally in the fight against injustice.
>
> (1979 Ed. at 98). Although some of these categories do not particularly apply to *prosecutorial discretion,* but are listed because Davis is writing about administrative agencies in general, *the category "open reasons" does apply. In all the cases consolidated herein, the prosecutors have openly specified their reasons for not sub-*

*mitting the cases for ARD, and those reasons, while they may be subject to disagreement as to their wisdom, do not amount to an abuse of discretion.*

\* \* \* \* \* \*

In any event, the decision to submit the case for ARD rests in the sound discretion of the district attorney, and absent an abuse of that discretion involving some criteria for admission to ARD wholly, patently and without doubt *unrelated* to the protection of society and/or the likelihood of a person's success in rehabilitation, such as race, religion or other such obviously prohibited considerations, the attorney for the Commonwealth must be free to submit a case or not submit it for ARD consideration based on his view of what is most beneficial for society and the offender.

508 Pa. at 309 & 310, 495 A.2d at 934 & 935 (Citations omitted; Emphasis added in part).

Thus, in *Lutz* we see the endorsement of a concept of "openness" when it comes to the exercise of discretion by a district attorney where the benefits [4] of a program to one accused of a crime weigh in the balance. However, it is obvious to this writer that the *overriding* consideration in *Lutz* is the creation of a record from which a challenge to the exercise of discretion by the prosecution can be made. This same air of "openness" is manifested in *Sorrell,* supra, where the unbridled exercise of the prosecution's demand for a jury trial (present in the form of a legislative enactment at 42 Pa.C.S. § 5104(c)) was held to be at odds with the defendant's opportunity to seek a non-jury trial pursuant to Rule 1101, and, therefore, was held to be unconstitutional in precluding the trial court from exercising the discretion conferred upon it by Rule 1101 in deciding whether a non-jury trial should be permitted. In particular, the *Sorrell* Court wrote:

Unlike Rule 1101, which provides for an impartial determination and fosters public accountability on the part of

---

**4.** The benefit flowing to one admitted to ARD is that, following successful completion of the program, a petition to have his record expunged may be filed and considered by the Common Pleas Court.

the prosecutor by *encouraging* him to state his position on the record, 42 Pa.C.S. § 5104(c) provides for prosecutorial control of the accused's motion to waive trial by jury without any provision for the prosecutor's *accountability* through judicial review. Compare *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977) (trial court must place on record its reasons for imposition of particular sentence).

500 Pa. at 361, 456 A.2d at 1329 (Emphasis added).

Even this Court in *Commonwealth v. Kindness*, 247 Pa.Super. 99, 371 A.2d 1346 (1977), *impliedly* embraced an "accountability" standard, for without such the means by which the Court could evaluate a district attorney's denial of the appellant's request for ARD treatment could not have been accomplished.

In *Kindness*, once the appellant had been charged with, and following his arraignment for, driving while under the influence of intoxicating liquor, he filed a motion seeking submission to ARD. The district attorney was directed by the court below to file an answer. He did so and gave two reasons for declining to act to have the appellant admitted to ARD. After the appellant was adjudged guilty of the offense charged, he filed an appeal from judgment of sentence. We affirmed, and, in doing so, held, in response to an averment that the exclusion of drunken drivers from ARD amounts to a denial of equal protection of the law, that:

It is undisputed that appellant was excluded from ARD pursuant to a prosecutorial office policy[—the applicability of which was made known to the defendant in the form of two (2) written reasons for exclusion], concurred in by the court below, against the admission of drunken driving cases to ARD. It is thus clear that the law as administered in Dauphin County deals alike with all members of this class.

247 Pa.Super. at 108, 371 A.2d at 1350.

It is beyond cavil that Common Pleas Courts may implement procedures, provided, of course, they do not conflict

with pronouncements of the Pennsylvania Supreme Court dealing with the orderly administration of the unified judicial system in this Commonwealth. See, *e.g., Brogan v. Holmes Electric Protective Co.,* 501 Pa. 234, 460 A.2d 1093 (1983).

Instantly, there was a collaborative effort, on the part of the President Judge and District Attorney of Philadelphia County, leading to the creation of a program to deal with recidivism. Each accused would be subject to evaluation for possible inclusion into the program. At least up until 1983, the District Attorney had formulated a laundry list of offenses which could subject an accused to the strictures of the program, *i.e.,* one particular assistant district attorney would oversee the case from beginning to end and one of three judges would be assigned to hear the case.

Granted, no formal rules where issued to the bar of Philadelphia County advising it of the existence of such a program, or the criteria looked to for causing an accused to be included therein. Nonetheless, I view the Career Criminal Program, in existence during the period the appellant complains of (see note 1, supra), to be more than just, paraphrasing the District Attorney's Office, an extension of its "office" policy. Quite the contrary is true, when one considers that the Program had the imprimatur of the local judiciary (through the President Judge, who is credited with aiding the District Attorney as to its inception). Moreover, there was the active participation of three of the Criminal Division's judges to see to the Program's effectuation. As such, I believe we would be truly remiss in tagging this Program, and its judicial and prosecutorial participants, nothing more than an expression of the internal operating policy of the District Attorney's Office. To do so would meld the offices of the jurist and prosecutor into one, each seemingly interacting and intermingling in the others affairs without concern with the appearance of this engagement conveyed to the bar and public alike.[5] As such, I do

---

5. This type of hybrid (judicial-prosecutorial) conduct should surely not escape scrutiny by an impartial body, such as Superior Court.

not join in the prosecution's referral to the Career Criminal Program as nothing more than an expression of "internal prosecutorial policies" to which an accused could not object or seek to have formalized (reduced to writing) for the perusal of an unwilling prospect/participant.

Having so stated, I now proceed to evaluate the Career Criminal Program in light of *Lutz* and *Sorrell,* both of which I find, at least as to the continued viability of the program, favor (or, in the language of *Sorrell,* "encourage") the recordation of the assistant district attorney's reason(s) for his/her inclusion of an accused in the Program. To require more on the part of the District Attorney's Office would constitute a form of rule-making, a function I believe exceeds our authority as an appellate court, whose purpose it is to interpret the law and not create it. Such a role is more appropriately reserved to the Supreme Court, by way of the Pennsylvania Constitution, and, where not in conflict with established procedure, the local judiciary. See *Brogan,* supra.

Our authority as an appellate tribunal is set by statute, and none I am aware of authorizes our mandating that the District Attorney's Office establish guidelines for its Career Criminal Program as a condition to its continued existence. However, to resolve the dispute at issue (disparate treatment of accused in the Program), one needs to be aware of the justification for the assistant district attorney's action. Such is not possible from the state of the record before this Court.

At the October 13, 1987, pre-trial hearing seeking recusal and an invalidation of the Career Criminal Program, counsel for the appellant argued that, in accordance with the rules and standards last published on 1/19/83 by the District Attorney's Office, his client's robbery charge would "be eliminated from the Career Criminal Program" under section 5, subsection c. See note 2, supra.

The response of the assistant district attorney, Bruce Sagel, as is herein relevant, was as follows:

Judge, for the record, the promulgation that [counsel for the appellant] is referring to is Mr. Castille's. It is four years old and *I have my own rules. It is not required by me to furnish those rules for the benefit of the Defender Association.*

(N.T. 4–5; Emphasis added)

My examination of the record has failed to uncover any statement (attributed to assistant district attorney Sagel, be it in affidavit form or a transcription of testimony) as to the reason(s) for the appellant's inclusion in the Career Criminal Program, a deficiency which may not be remedied by reference to the content of the appellee's supplemental brief. See, *e.g., McCormick v. Allegheny General Hospital,* 364 Pa.Super. 210, 527 A.2d 1028 (1987). Even if, *arguendo,* one were to permit the rehabilitation of the barren record with the allegations in the appellee's appellate brief, it would be to no avail since the brief was the work-product of a cadre of attorneys, one being the District Attorney Castille, which failed to include assistant district attorney Sagel. This factor is crucial given the assistant district attorney's statement at the pre-trial hearing that the 1983 rules were those of "Mr. Castille" and not his; he had his "own rules" for determining whether an accused should be admitted to the Career Criminal Program. Thus, the remarks appearing in the appellee's brief would not be those of the party whose reason(s) for acting as he did need to be explored.

What was looked to by the assistant district attorney, which he felt not compelled to disclose at any point in the litigation, is not discernible by this writer. To attempt to do so would be pure speculation and surmise, and, if one were to pursue such a course, it could just as reasonably be said that the prohibited trait of "race" was looked to, a matter denounced by our Supreme Court in *Lutz* as one of the criteria not to be factored into a district attorney's decision whether to recommend an accused for ARD.

Rather than engaging in some form of legerdemain, I would deem it prudent to vacate the judgment of sentence, subject to being reinstated by the court below following the submission of an affidavit, or the conducting of a hearing, which affords the assistant district attorney who handled the appellant's trek through the Career Criminal Program an opportunity to create a "record" stating his reason(s) for recommending the appellant for inclusion in the Program. At that time, the court below can then assess whether any abuse of discretion on the part of the prosecutor took place.[6]

Unlike the Majority, I would vacate the judgment of sentence, with directions that the case be remanded for compliance with the position set forth herein. Since the Majority holds otherwise, I respectfully dissent.

**6.** I would point out that the reasons made reference to by the appellee in its brief to us, *e.g.,* the appellant's extensive juvenile and adult record punctuated with the commission of serious (felony) offenses, would be, in my opinion, sufficient justification for inclusion of the appellant in the Career Criminal Program. The only procedure I would encourage the District Attorney's Office to pursue would be the documentation of its reason(s) for inclusion of an accused into the Program. This would be consistent with the "openness" spoken of by the Supreme Court in *Lutz* and *Sorrell.* No elaborate criteria need be formulated or published, but reason(s) for the District Attorney's actions need to be present in the record to assist a reviewing court with its evaluation of the basis for the course taken.

As for those cases cited by the appellee in its brief, referring to the violation of or non-compliance with an agency's internal operating procedure not entitling the complainant to relief in the form of invalidating the agency's actions, in none of the cases was the appellate court hampered, as is the case instantly, from conducting a full and comprehensive assessment as to why the agency or its agents acted as they did. See *Sullivan v. United States,* 348 U.S. 170, 75 S.Ct. 182, 99 L.Ed. 210 (1954); *United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979); *United States v. Snell,* 592 F.2d 1083 (9th Cir.1979), cert. denied, 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979). The same can be said for "internal operating" rules cases: *United States v. Nelligan,* 573 F.2d 251, 254 (5th Cir.1978); *Port of Jacksonville Maritime, etc. v. Hayes,* 485 F.Supp. 741, 743 (M.D.Fla. 1980), aff'd (CA5), 620 F.2d 567; *Herrin v. Federal Aviation Administration,* 418 F.Supp. 889, 893 (W.D.Okla.1976); see also *F.T.C. v. Owens–Corning Fiberglas Corp.,* 626 F.2d 966, 975 (U.S.Ct.App.D.C. 1980) ("Agencies are free to determine their own procedures, as long as they do not violate constitutional or statutory safeguards." (Citations omitted)).