J-S38004-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SHAINE ARCH MCCARTY | |
| Appellant | No. 117 MDA 2015 |

Appeal from the PCRA Order of December 19, 2014
In the Court of Common Pleas of York County
Criminal Division at No.: CP-67-CR-0007566-2010

BEFORE:  WECHT, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY WECHT, J.:                **FILED NOVEMBER 17, 2015**

Shaine Arch McCarty appeals the December 19, 2014 order dismissing his petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46.  Appointed appellate counsel for McCarty, Jennilee M. Kemling, Esq., has filed with this Court a **Turner**/**Finley**[1] brief and a petition to withdraw as counsel.  Because we disagree with Attorney Kemling that there are no meritorious issues to present on appeal, we deny her petition to withdraw, and we remand for the preparation of an advocate's brief on McCarty's behalf.

_____

[1]  **See Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley** 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

On December 5, 2010, McCarty was involved in an altercation with Samantha Bowling and others at a gathering of friends and acquaintances at two apartments in the same building. Ms. Bowling and others testified that the fight arose after McCarty entered an apartment, insulted them profanely, then left. Ms. Bowling and another witness testified that they followed McCarty out into a common area behind the courtyard to confront him. Ms. Bowling maintained that her demeanor was civil, and that, when McCarty turned his back on her, she merely touched his shoulder to get his attention. He responded by grabbing her by the hair and slamming her face into a nearby structural pillar or pole several times, inflicting a gash to her head that required eight stitches to close, breaking her nose, and causing her severe discomfort in her chest that required her to return to the hospital two days after her initial treatment.

Although the defense introduced no testimony or evidence, trial counsel Ronald J. Gross, Esq., argued to the jury in closing that McCarty acted in self-defense. Attorney Gross acknowledged that McCarty in fact insulted the women, and that he spit on Ms. Bowling's friend outside the apartment when she accosted him. But he argued that when McCarty turned his back on the women, Ms. Bowling jumped on his back, struck him, and bit him several times on the head. McCarty then threw Ms. Bowling off his back and she struck her face on the pole. Photographs taken by responding officers at the scene confirmed that McCarty had sustained what appeared to be bite wounds to his head.

McCarty was arrested and released on bail the same day that the altercation occurred. Ms. Bowling also was cited for harassment under 18 Pa.C.S. § 2709(a)(1) ("A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person . . . strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same."), a summary offense to which she admitted pleading guilty. However, she suggested that she did so as a convenience, maintaining that she had not jumped on McCarty's back or bit his head. **See** Notes of Trial Testimony ("N.T.T."), 2/6-7/2012, at 150 (testifying that she pleaded guilty because the arresting officer told her that "[she] had to," but denying that she had jumped on McCarty's back or bit his head).

On February 7, 2012, a jury found McCarty guilty of aggravated assault, 18 Pa.C.S. § 2702(a)(1), and simple assault, 18 Pa.C.S. § 2701(a)(1). The trial court from the bench found McCarty guilty of summary harassment, 18 Pa.C.S. § 2709(a)(1). On April 16, 2012, the trial court sentenced McCarty to seven to fourteen years' imprisonment for aggravated assault, with no further penalty imposed for simple assault. For McCarty's harassment conviction, the court imposed an additional ninety-day sentence to run concurrently with his sentence for aggravated assault. McCarty timely appealed, and this Court affirmed his judgment of sentence on April 25, 2013. **Commonwealth v. McCarty**, No. 1626 MDA (Pa. Super. 2012) (unpublished memorandum).

- 3 -

On August 21, 2013, McCarty filed a *pro se* PCRA petition. On August 29, 2013, the PCRA court appointed Joshua E. Neiderhiser, Esq., as counsel for McCarty. On November 8, 2013, Attorney Neiderhiser filed an amended PCRA petition raising various claims of constitutionally ineffective assistance of counsel ("IAC"). Specifically, McCarty contended that Attorney Gross was ineffective for failing to adduce the testimony of Brandy Lehr (*née* Dellapenna), Polytimi Stump (*née* Skouras), Terry McCarty, and Justin Walters. He also alleged that Attorney Gross was ineffective for failing to convey to McCarty a favorable plea bargain offered by the Commonwealth and for suggesting to McCarty that, if McCarty tendered an additional payment to Attorney Gross, Attorney Gross could keep him out of prison.

Pursuant to Pa.R.Crim.P. 908, the PCRA court held an evidentiary hearing on May 23, 2014, at which Attorney Gross, Mrs. Lehr, Mrs. Stump, and Terry McCarty testified. Because Mr. Walters died before the hearing, the court admitted a notarized statement by Mr. Walters detailing the substance of the testimony that he would have provided at trial, had he been called.

On December 19, 2014, the PCRA court denied McCarty's PCRA petition in an opinion and order, reasoning that trial counsel was not ineffective for failing to call the above-mentioned witnesses to the events underlying McCarty's convictions. PCRA Court Opinion ("P.C.O."), 12/19/2014, at 2-7. Specifically, the PCRA court found that the proposed testimony of Mrs. Lehr, Mrs. Stump, and Terry McCarty would not have

provided the jury with any additional information. Thus, Attorney Gross' decision not to call these witnesses was not detrimental to McCarty's interest. *Id.* at 2-5. The PCRA court, contradicting its in-court ruling without explanation, found that it could not consider Mr. Walters' notarized statement because the statement was hearsay that was not subject to any of the exceptions set forth in Pa.R.E. 804(b) ("Exceptions to the Rule Against Hearsay—When the Declarant is Unavailable as a Witness"). *Id.* Because the PCRA court concluded that it could not consider the statement that it deemed inadmissible, and because Mr. Walters obviously could not testify, the court determined that Attorney Gross was not ineffective for failing to call Walters as a witness. *Id.*

On January 13, 2015, McCarty timely filed a notice of appeal from the dismissal of his PCRA petition. On January 15, 2015, the PCRA court directed McCarty to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On January 30, 2015, appointed appellate counsel, Attorney Kemling, entered her appearance on behalf of McCarty. McCarty filed his concise statement on February 4, 2015. The next day, the PCRA court filed an opinion pursuant to Pa.R.A.P. 1925(a), referring this Court to its December 19, 2014 opinion and order. On March 12, 2015, Attorney Kemling filed a *Turner/Finley* brief and a petition to withdraw as counsel with this Court, in which she averred that she could identify no meritorious issues to pursue on appeal.

We first consider whether counsel has complied with the technical requirements that our courts have established in order for appointed counsel to withdraw pursuant to *Turner* and *Finley*.

Counsel petitioning to withdraw from PCRA representation must proceed [under *Turner*/*Finley* and] must review the case zealously. *Turner*/*Finley* counsel must then submit a "no-merit" letter to the [PCRA] court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues [that] petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.

Counsel must also send to the petitioner: (1) a copy of the "no merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.

\* \* \* \*

Where counsel submits a petition and no-merit letter that satisfy the technical demands of *Turner*/*Finley*, the court—[PCRA] court or this Court—must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief.

*Commonwealth v. Doty*, 48 A.3d 451, 454 (Pa. Super. 2012) (quoting *Commonwealth v. Wrecks*, 931 A.2d 717, 721 (Pa. Super. 2007); *Doty*'s textual modifications omitted for clarity).

In her brief, Attorney Kemling sets forth the issues of which McCarty seeks review. *See* Brief for McCarty at 4. She also has set forth a thorough history of McCarty's case. *Id.* at 5-9. Attorney Kemling has reviewed the applicable statutes, case law, and rules of procedure, *id.* at 10-19; she has filed a petition for leave to withdraw as counsel; and she has explained why

she believes that McCarty has no meritorious issues to pursue on appeal. *Id.* at 14. Attached to Attorney Kemling's petition is a copy of the letter she sent to McCarty, which advised him of her intent to seek to withdraw as counsel; apprised McCarty of his right to retain new counsel or to proceed *pro se*; and provided McCarty with a copy of the ***Tuner/Finley*** brief that she filed in this Court. Consequently, counsel has complied with ***Turner/Finley***'s technical requirements.

Before deciding counsel's motion to withdraw, however, we also must independently review the record, beginning with the claims raised by McCarty. Attorney Kemling has identified three potential issues for our review:

1. Whether the [PCRA] court erred in dismissing [McCarty's] PCRA petition where trial counsel failed to call Brandy Lehr, Terry McCarty, Polytimi Stump, and Justin Walters as defense witnesses at trial?

2. Whether the [PCRA] court erred in dismissing [McCarty's] PCRA petition where trial counsel failed to advise [McCarty] of all plea offers prior to going to trial?

3. Whether the [PCRA] court erred in dismissing [McCarty's] PCRA petition where trial counsel told [McCarty] he would keep [McCarty] out of jail if he was paid?

Brief for McCarty at 4 (footnote omitted).

In reviewing a PCRA court's order denying relief, we must assess whether the determination of the PCRA court is supported by the evidence of the record and is free of legal error. The PCRA court's findings will not be

disturbed unless there is no support for those findings in the certified record.

*Commonwealth v. Garcia*, 23 A.3d 1059, 1061 (Pa. Super. 2011).

McCarty's issues all implicate IAC.

> [A] PCRA petitioner will be granted relief [for IAC] only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." *Commonwealth v. Colavita*, 993 A.2d 874, 886 (Pa. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). In Pennsylvania, we have refined the *Strickland* performance and prejudice test into a three-part inquiry. *See Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001). Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. *Commonwealth v. Ali*, 10 A.3d 282, 291 (Pa. 2010).

*Commonwealth v. Spotz*, 84 A.3d 294, 311-12 (Pa. 2014) (citations modified). To demonstrate prejudice, the petitioner must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Commonwealth v. Johnson*, 966 A.2d 523, 533 (Pa. 2009). A petitioner's failure to satisfy any one element of the test will result in the rejection of his claim. *Commonwealth v. Jones*, 811 A.2d 994, 1002 (Pa. 2002). Thus, if an appellant is unable to demonstrate prejudice, we need not demonstrate

the other two elements. ***Commonwealth v. Albrecht***, 720 A.2d 693, 701 (Pa. 1998).

In his first issue, McCarty claims that trial counsel was ineffective for failing to call Mrs. Lehr, Terry McCarty, Mrs. Stump, and Mr. Walters to testify at trial. Brief for McCarty at 12. In order to demonstrate that trial counsel was ineffective in failing to present the testimony of a witness, the petitioner must establish the following factors:

> 1) [T]he witness existed; 2) the witness was available to testify for the defense; 3) counsel knew of, or should have known of, the existence of the witness; 4) the witness was willing to testify for the defense; and 5) the absence of the testimony of the witness was so prejudicial as to have denied him a fair trial.

***Commonwealth v. Smith***, 675 A.2d 1221, 1230 (Pa. 1996).

Mrs. Lehr, Terry McCarty, and Mrs. Stump all testified at the PCRA hearing. Notes of P.C.R.A. Testimony ("N.P.T."), 5/23/2014, at 25, 38, 47. Lehr testified that she was willing and available to testify at trial, and that Attorney Gross interviewed her prior to McCarty's trial. ***Id.*** at 26-27. On the night in question and at the time of the PCRA hearing, she was McCarty's girlfriend. ***Id.*** at 25-26. Although she did not witness the fight itself, she would have testified that, as McCarty left the apartment, he was pursued "by one girl screaming, do we got a fuckin problem. Exactly those words." ***Id.*** at 28. She later testified that the women in question "went flying out the door after him." ***Id.*** at 32. In short, her intended testimony would have contradicted that of Ms. Bowling and Ms. Bowling's friend to the effect that

their interaction with McCarty had been civil and would have been consistent with the defense's theory of the case. *See* N.T.T. at 184 (noting that at least two prosecution witnesses attest to yelling, while Ms. Bowling and her friend "say that they approached [McCarty] outside. They weren't yelling, they were just inquiring as to why would you use such foul language, that's rude, that's not nice").

Terry McCarty, McCarty's brother, testified at the PCRA hearing that he was willing and available to testify at trial, and that Attorney Gross interviewed him prior to McCarty's trial. N.P.T. at 39-40. Mr. McCarty testified that he witnessed a person jump onto McCarty's back and another person run past him shortly after that. *Id.* However, Mr. McCarty did not witness more of the altercation, because he was busy subduing the second person who ran past him. *Id.* at 45-46. Thus, Terry McCarty, too, testified to observations consistent with the defense's account of the case and at odds with aspects of Ms. Bowling's and other prosecution witnesses' testimony.

Mrs. Stump testified at the PCRA hearing that she was willing and available to testify at trial, and that Attorney Gross interviewed her prior to McCarty's trial. *Id.* at 48-49. Stump also testified that "she saw somebody on [McCarty's] back from behind and they were beating him, hitting him in the head. And then I just saw him take who[m]ever it was and just flicked them off into I think there was—it looked like—it was either wood like a deck

pole." ***Id.*** at 50. This testimony also was as consistent with McCarty's theory of the case as the victim's and her friends' account of events.

During the PCRA hearing, Attorney Gross testified that McCarty provided him with a list of potential witnesses nearly a year before trial. ***Id.*** at 72. Mr. Walters' name and contact information were included on this list. ***Id.*** However, at no point did Attorney Gross contact Walters. ***Id***. With regard to the other named witnesses, Attorney Gross testified that he at least spoke with them briefly, which was corroborated by the potential witnesses in question. ***Id.*** at 67. He set forth various reasons why he opted not to have them testify. ***See id.*** at 67-68 (indicating that Terry McCarty had seen very little of the relevant events, and that his account was "essentially neutral," and "wasn't going to completely help disprove what the Commonwealth [was] saying"), 68-70 (asserting that Mrs. Lehr corroborated Ms. Bowlings' and her friends' "aggressiveness" and "yelling"; acknowledging that, if she had told the story at trial that she told during the PCRA hearing, he would have "called her in a heartbeat"; but suggesting, somewhat equivocally, that he did not recall her providing such an account at the time), 70 (testifying that when he spoke to Mrs. Stump she told him that she was "very intoxicated and she did not see anything").

Mr. Walters died before the hearing. ***Id.*** at 18. However, before he died, Walters' prepared a notarized statement. ***Id.*** During the PCRA

- 11 -

hearing, the PCRA court admitted Walters' written statement. *Id.* at 59-60.[2]

Walters' statement detailed his account of the underlying events related to McCarty's conviction. Mr. Walters indicated that he "was ready to testify at all court dates. [He] was never contacted by either side in the criminal proceedings." Walters' Statement, 7/23/2013. Further, Walters' statement set forth facts, which would have supported a jury finding that Ms. Bowling struck the first blow and that McCarty acted in self-defense.[3] *Id.* Upon learning the content of Walters' statement, Attorney Gross offered no excuse for his failure to contact Walters:

> **Q:** What about Mr. Walters, did you ever speak to Mr. Walters?
>
> **[ATTORNEY GROSS]:** No, I did not. I wish that if he was going to say what he allegedly said, that would have been great. I just can't explain why I would not have spoken with him or have some arrangement for him to meet me to speak.

_____

[2] As set forth below, the PCRA court effectively disavowed doing so in his Rule 1925(a) opinion, despite clearly deciding at the hearing that the statement was admissible. *Compare* P.C.O. at 6 *with* N.P.T. at 60.

[3] Walters account corroborated McCarty's claim of self-defense.

> I saw [Ms. Bowling] on [McCarty's] back biting his head. I saw [McCarty] reach his hands up, lean down and pull her forward over his head off of him. When [McCarty] did that, [Ms. Bowling's] head hit the porch beam in front of them. [Ms. Bowling] fell to the ground and [McCarty] backed up. [Ms. Bowling] was knocked unconscious at [this] point. I picked her up and carried her into the house.

Mr. Walters' Statement, 7/23/2013.

N.P.T., 5/23/2014, at 72-73.

In summation, Attorney Gross acknowledged that, if the witnesses in question had testified at trial, their testimony would have contradicted the Commonwealth's witnesses' accounts of Ms. Bowling's demeanor toward McCarty and whether Ms. Bowling jumped on his back and bit him. He further opined that, if the jury had credited their testimony, the testimony would have offered the jury a competing account of the events underlying the case. *Id.* ("If that is believed and [*sic*] absolutely that would have been different than what I—that would have been different than what the jury heard.").

In her **Turner**/**Finley** brief, Attorney Kemling relies upon **Commonwealth v. Priovolos**, 715 A.2d 420 (Pa. 1998), to support her conclusion that McCarty cannot show that the omission of Mr. Walters' and the other witnesses' testimony was prejudicial or lacking a reasonable basis. Brief for McCarty at 13-14. In **Priovolos**, the appellant argued that his PCRA counsel was ineffective in failing to present testimony of several witnesses at his PCRA evidentiary hearing. 715 A.2d at 421. However, the appellant did not substantiate the alleged substance of the witnesses' proposed testimony because the witnesses were either deceased or unavailable at the time of the hearing, and no record existed of their potential testimony. **Id.** at 423. Accordingly, the appellant could only speculate regarding the witnesses' possible testimony. **Id.** The **Priovolos** Court found "nothing from the record that indicated that the absence of

testimony from any of these witnesses, either from the PCRA hearing or trial, worked prejudice upon [the appellant]." *Id.* Consequently, the Court found that counsel was not ineffective. *Id.*

IAC claims must be based upon evidence, not sheer conjecture. ***Commonwealth v. Bullock***, 415 A.2d 1240, 1241 (Pa. Super. 1979) (*per curiam*). Further, trial counsel's failure to gather evidence on the petitioner's behalf rises to IAC only if the petitioner substantiates that the evidence was available to counsel at trial. ***Commonwealth v. Stinnett***, 514 A.2d 154, 157 (Pa. Super. 1986). In the instant matter, McCarty provided tangible evidence of Walters' proposed testimony through Walters' written statement, which the PCRA court admitted.[4] As well, three other potential but uncalled witnesses testified at the PCRA hearing that, had they been called at trial, they would have provided an account of events that arguably could have swayed the jury in McCarty's favor. Accordingly, counsel's reliance upon ***Priovolos*** is questionable at best: In ***Priovolos*** no

_____

[4]    As noted, the PCRA court now maintains that Mr. Walters' written statement is inadmissible hearsay. P.C.O. at 5-6. However, during the PCRA hearing the court admitted Mr. Walters' statement:

> [I]t occurs to me it's admissible. The statement is admissible. It's proof that he made it, which . . . is that the statement is simply proof that there is somebody out there that made the statement that was not called as a witness.

N.P.T. at 58-60.

such statements or testimony were offered to support the petitioner's claims regarding the proposed witnesses' availability or the substance of the testimony they might have offered.

*Commonwealth v. Thomas*, 908 A.2d 351 (Pa. Super. 2006), by contrast, involved more analogous circumstances. In *Thomas*, the petitioner argued that the PCRA court erred by failing to admit a written statement of an unavailable witness to support the claim that his trial counsel was ineffective by failing to present that witness at trial. *Id.* at 353. The witness provided appellant's PCRA counsel with a written statement, under penalty of perjury, regarding her proposed testimony, but died before the hearing. *Id.* at 353-54. The PCRA court excluded the statement in part because the witness did not record it "before an officer authorized to administer oaths." *Id.* at 354. In the instant matter, however, Mr. Walters did precisely that.

In this case, the PCRA court admitted Walters' written statement at the evidentiary hearing, which provided evidence of Walters' willingness and ability to testify at trial. N.P.T., 5/23/2014, at 59-60. Furthermore, that the statement was notarized distinguishes *Thomas*, just as the mere existence of the notarized statement and the testimony at the PCRA hearing of the other witnesses distinguishes *Priovolos*. Thus, we cannot conclude, based upon this record and without the benefit of advocacy, that Mr. Walters'

statement could not have been admitted.[5]  Furthermore, taken collectively, and as Attorney Gross acknowledged, the potential witnesses' testimony, with or without Mr. Walters' statement, corroborated to varying degrees the defense's alternative account of the altercation.  Attorney Gross' testimony also was equivocal as to whether he fully considered the potential value of each of these witnesses' testimony at the time or had a reasonable basis not to call each witness at trial.  Even if any one of these witness' accounts might not have prejudiced the defense, the PCRA court may consider the cumulative prejudicial effect of failing to call them all.  *See Commonwealth v. Spotz*, 18 A.3d 244, 321 (Pa. 2011) ("When the failure of individual claims is grounded in lack of prejudice, then the cumulative prejudice from those individual claims may properly be assessed.").

Under the instant circumstances, we respectfully disagree with Attorney Kemling that Attorney Gross' failures even to speak with Mr. Walters and to call one or more of the testifying witnesses at trial and to do so does not establish a claim sufficiently colorable to warrant advocacy. We find that there are arguments that Mr. Walters' written statement either was admitted or could have been admitted and that, even without

---

[5]  The parties and the court appear to agree that, if the statement is actually hearsay, it is inadmissible because it is subject to none of the exceptions found in Pa.R.E. 804.  However, Attorney Neiderhiser maintained during the PCRA hearing that the statement was not hearsay in the first instance, and the PCRA court appeared to agree following extensive discussion.

Mr. Walters' testimony, the sum of the other witnesses' proposed testimony might have created a reasonable probability of a different outcome at trial. While we express no opinion regarding the likelihood that such arguments should have prevailed before the PCRA court or will prevail before this Court, at this juncture it is our duty only to assess independently whether the record would support an advocate's brief in this matter. On the above basis alone, we find that it does.

In his second issue, McCarty claims that trial counsel was ineffective for failing to advise him of all plea offers prior to going to trial. Brief for McCarty at 15. In order to show that trial counsel was ineffective for failing to advise him of all plea offers prior to going to trial, McCarty must establish the following criteria:

> (1) [A]n offer for a plea was made; (2) trial counsel failed to inform him of such offer; (3) trial counsel had no reasonable basis for failing to inform him of the plea offer; and (4) he was prejudiced thereby.

*Commonwealth v. Chazin*, 873 A.2d 732, 735 (Pa. Super. 2005) (quoting *Commonwealth v. Copeland*, 554 A.2d 54, 61 (Pa. 1988)); *cf. Missouri v. Frye*, 132 S.Ct. 1399, 1408 (U.S. 2012) (holding that defense counsel has a duty to convey and explain all plea offers extended by the prosecution); *Lafler v. Cooper*, 132 S.Ct. 1376, 1384-85 (U.S. 2012) (requiring the petitioner to show that, "but for the ineffective advice of counsel[,] there is a reasonable probability that the plea offer would have been presented to the court . . ., that the court would have accepted its

terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed").

At the PCRA evidentiary hearing, Attorney Gross testified that he advised McCarty to accept the Commonwealth's sole plea offer of five to ten years' imprisonment. N.T., 5/23/2014, at 64. McCarty failed to accept that plea offer. *Id.* McCarty testified that he believed that the Commonwealth was willing to offer him a lesser plea of two to four years' imprisonment. *Id.* at 12. Attorney Gross acknowledged that he attempted to negotiate a lesser plea bargain prior to trial but testified unequivocally that he was unsuccessful in his negotiations and that there had never been an offer of a negotiated plea involving only two to four years' imprisonment on the table. *Id.* at 64-65.

In his third issue, McCarty claims that trial counsel was ineffective for telling McCarty that he would keep him out of jail if McCarty paid him. Brief for McCarty at 17. The PCRA court maintains that issues regarding attorney payment are not cognizable under the PCRA. P.C.O. at 8. Although not thoroughly developed, McCarty appears to contend that Attorney Gross' communication to him affected his decisions to reject the plea offer. *See* N.P.T. at 14 ("If he would have told me, that's the only deal, [*i.e.*, a deal for a two to four-year sentence,] . . . yeah, I probably would have took it.").

It is within counsel's professional discretion to choose which issues to pursue on appeal, and we do not intend to impose upon or limit that

discretion. However, we are not persuaded that McCarty's claims so lacked merit as to warrant a **Turner**/**Finley** brief rather than one presenting the vigorous advocacy on McCarty's behalf to which he is entitled. When this Court concludes that claims available to a PCRA petitioner have sufficient merit to warrant advocacy, we must deny counsel's request to withdraw and remand to allow counsel to file an advocate's brief. **See Wrecks**, 931 A.2d 721 (Pa. Super. 2007). We do so now.

We direct Attorney Kemling to file an advocate's brief within thirty days of the date of this memorandum.[6] The Commonwealth shall have thirty days from the date that Attorney Kemling files that brief to submit its own brief in rebuttal. Thereafter, Attorney Kemling will have fifteen days to file a reply brief, should she determine that it is appropriate to do so.

Petition to withdraw as counsel denied. Case remanded. Jurisdiction retained.

---

[6] In so doing, we do not intend to restrict Attorney Kemling's discretion to pursue or abandon McCarty's second and third issues on appeal. Because we direct Attorney Kemling to prepare an advocate's brief, we leave it to her to reassess whether these claims have sufficient potential merit to warrant advocacy.